[Sac. No. 6673.   In Bank.   May 24, 1957.]

EVELYN, INCORPORATED (a Corporation) et al., Appellants, v. CALIFORNIA EMPLOYMENT STABILIZATION COMMISSION et al., Respondents.

Homer E. Geis and Robert A. Waring for Appellants.

Edmund G. Brown, Attorney General, Irving H. Perluss, Assistant Attorney General, and William L. Shaw, Deputy Attorney General, for Respondents.

SHENK, J.—This is an appeal by the plaintiffs from a judgment for the defendants in an action to recover unemployment insurance taxes paid under protest.

The plaintiff corporation, Evelyn, Incorporated, was organized in 1939 and the plaintiffs Evelyn Morris and Ernest Goveia became the sole stockholders. Thereafter, and during

the years involved, 1942 through 1945, they conducted a dry cleaning business. They were elected as officers of the corporation and operated and managed the business by mutual consent, but the usual corporate meetings were not held, nor were the usual corporate records maintained. However, the corporate franchise tax and both state and federal corporate income taxes were paid each year. No salaries or dividends were officially declared, but the stockholders withdrew profits on an agreed basis and advanced personal funds when necessary to maintain the business. Both business and personal bills were paid from the business income. A payroll account was kept but the names of neither Ernest Goveia nor Evelyn Morris appeared thereon. However, in filing federal income withholdings and social security returns, the corporation made payments in behalf of Mr. Goveia and Mrs. Morris as if they were employees.

Prior to 1946 the corporation made no state unemployment insurance tax returns, but beginning that year returns were made in which Mr. Goveia and Mrs. Morris were named as employees. In 1950 a deficiency assessment was imposed by the defendant California Employment Stabilization Commission for unemployment insurance contributions for the years 1942 through 1945. During the entire period involved an employer must have had a minimum of four employees in order to be subject to the provisions of the Unemployment Insurance Law. (Unemployment Insurance Act, § 9, as amended Stats. 1937, ch. 740, § 1, p. 2055; Stats. 1945, ch. 545, § 1, p. 1082, ch. 942, § 1, p. 1776.) Unless Mr. Goveia and Mrs. Morris are to be considered as employees during that period the corporation did not have four employees and the assessment was improperly levied.

The trial court found that "each of Goveia and Morris received compensation from the corporation for their services; that such compensation received by Goveia and Morris from the corporation is wages. . . ." This finding is supported by substantial evidence and the court properly concluded that the compensation received constituted "wages with reference to the provisions of the Unemployment Insurance Act and subject to tax or contribution under the said Act." To hold now as a matter of law that Mr. Goveia and Mrs. Morris were not employees would be to disregard the corporate entity to suit the convenience and purpose of the stockholders. Certainly they should not be permitted to assert the employer-employee relationship in seeking benefits conferred by law, including coverage under the federal social security program

and at the same time to deny the existence of such a relationship in order to avoid obligations imposed by other laws. (See *Higgins* v. *Smith*, 308 U.S. 473, 477 [60 S.Ct. 355, 84 L.Ed. 406] ; *California Emp. Com.* v. *Butte County etc. Assn.*, 25 Cal.2d 624, 636-637 [154 P.2d 892].)

The plaintiffs next contend that the assessment or at least a portion thereof was barred by the statute of limitations. As stated, the tax was assessed in 1950 for taxes due for the years 1942 through 1945. The law in effect prior to September 15, 1945, provided for an assessment against employer units which had failed to make the required returns, but limited such assessments as follows: ". . . provided, that in the absence of an intent to evade the provisions of this act such assessment must be made and notification given to the employer as hereinafter provided within three years from the date on which the contribution liability included in the assessment became due." (Gen. Laws, Act 8780d, § 45.5; Stats., 1943, p. 3054.) In 1945 section 45.5 was amended, effective September 15, 1945, to provide in subparagraph (f) as follows: "Except in the case of failure without good cause to file a return, fraud or intent to evade this act or the authorized rules and regulations, every notice of assessment shall be made within three years. . . ." (Stats. 1945, p. 1097.)

As no intent to evade was put in issue it appears that under the 1943 Act a three year statute of limitation would have been in effect. ▇ But under the 1945 Act there is no limitation on assessments for those delinquencies due, among other things, to a "failure without good cause to file a return." In the present case the trial court expressly found that there was no good cause why the plaintiff corporation failed to file a return. The plaintiffs contend that good cause exists for their failure and they refer to decisions which define "good cause" as to applications such as here not involved. The record in this case reveals no set of circumstances which would justify a finding of good cause for failure to file the returns. A bona fide but mistaken belief that the law does not require a particular course of conduct does not constitute good cause for a failure to comply therewith.

From the foregoing it is apparent that if the 1943 Act is applicable to any portion of the period in question, the assessment cannot be enforced as to that portion. But if the 1945 Act is applicable to all or any portion of the period, that portion of the assessment to which the act applies can and should be enforced.

Under the provisions of the acts both before and after September 15, 1945, the contributions required from an employer subject to the tax became due on the first day of the calendar month following the close of each calendar quarter. (Stats. 1943, p. 3037; Stats. 1945, p. 1095.) It is clear, therefore, that the contribution becoming due on the first day of October, 1945, for the third calender quarter in 1945, and the contribution becoming due on the first day of January, 1946, for the fourth calendar quarter of 1945, were subject to the 1945 act and the assessment was properly levied as to those contributions.

The theory by which the defendants seek to make the 1945 act applicable to the remainder of the assessment is that before any action is barred by the statute the Legislature has the power to extend the period prescribed therein. ■ The extension of the statutory period within which an action must be brought is generally held to be valid if made before the cause of action is barred. (*Weldon* v. *Rogers,* 151 Cal. 432 [90 P. 1062].) The party claiming to be adversely affected is deemed to suffer no injury where he was under an obligation to pay before the period was lengthened. This is on the theory that the legislation affects only the remedy and not a right. (*Mudd* v. *McColgan,* 30 Cal.2d 463 [183 P.2d 10]; *Davis & McMillan* v. *Industrial Acc. Com.* 198 Cal. 631 [246 P. 1046, 46 A.L.R. 1095]; 31 Cal.Jur.2d 434.) An enlargement of the limitation period by the Legislature has been held to be proper in cases where the period had not run against a corporation for additional franchise taxes (*Edison Calif. Stores, Inc.* v. *McColgan,* 30 Cal.2d 472 [183 P.2d 16]), against an individual for personal income taxes (*Mudd* v. *McColgan, supra,* 30 Cal.2d 463), and against a judgment debtor (*Weldon* v. *Rogers, supra,* 151 Cal. 432). ■ It has been held that unless the statute expressly provides to the contrary any such enlargement applies to matters pending but not already barred. (*Mudd* v. *McColgan, supra,* 30 Cal.2d 463.)

The foregoing statement of the law is not disputed by the plaintiffs. They contend, however, that the change was more than a mere extension of the period of time in which an assessment might be levied; that the change required that the corporation be able to establish that it had good cause for not filing a return; that while it might have been able to show good cause had it been required to do so during the period in question it could not conveniently do so at the time of the assessment and after the events which gave rise to the obligation; that the change therefore constituted the creation of new

obligations and the imposition of new duties, the exaction of new penalties not specifically provided for in the new legislation and the impairment of vested rights which they might assert in an action for the recovery of the assessment.

It should be borne in mind that the obligation which the commission sought to enforce was not one which arose out of the 1945 Act in altering the applicable statute of limitations, but rather one which arose out of provisions of the Unemployment Insurance Act existing at the time the corporation failed to comply therewith. ■ And where, as here, the Legislature properly could have extended the period of limitations as to all obligations surviving on September 15, 1945, certainly it could have imposed a less onerous burden on those obligors by providing a means of escape to those who had good cause for their failure to comply with existing law. The plaintiffs cannot be heard to complain that because they now can make no showing of good cause they have thus been deprived of vested rights which would enable them to successfully maintain this action. They were never possessed of rights, vested or otherwise, which were entitled to the protection asserted by the plaintiffs. Furthermore, no showing is made by them as to the manner in which the corporation's failure to comply with the law might have been justified at the time the obligations were incurred, or why such a showing became an added burden by lapse of time.

The plaintiffs seek to establish the impropriety of the assessment for the first two calendar quarters of 1942 for an additional reason. They contend that the contributions for those quarters became due on the first days of April and July of that year. (See Stats. 1943, p. 3037.) It may be assumed that in such a case the three year period of limitations would have run prior to the effective date of the 1945 Act on September 15 of that year and the collection of the amounts due would have been barred. ■ The commission contends, however, that the contributions for those two calendar quarters did not become due until after the 15th day of September, 1942, and that the obligations still survived at the time the period was extended on the 15th day of September, 1945. This contention is based on provisions of the law which define employers subject to the Unemployment Insurance Act, and it is claimed that the plaintiff corporation did not become subject to the act until the 20th of September, 1942, for all prior contributions otherwise due for the year 1942.

Section 9 of the Unemployment Insurance Act as it read prior to September 15, 1945, provided that " 'Employer' means: (a) Any employing unit, which for some portion of a day, . . . in each of twenty different weeks, whether or not such weeks are or were consecutive, has within the current calendar year or had within the preceding calendar year in employment four or more individuals, irrespective of whether the same individuals are or were employed in each such day. . . ." (Stats. 1937, p. 2055.) It appears from the record that the plaintiff corporation completed its 20th week of qualifying employment on September 20, 1942. There is nothing to indicate that prior to that time the corporation was an employer subject to the tax. Accordingly, it could not have incurred any tax liability prior to that time, and on the first days of the months following the first two calendar quarters in 1942 no tax could have become due and payable on which the statute might have run. The plaintiffs claim that the corporation was qualified from the beginning of the year 1942 because of its employment record in the prior calendar year. But there is no evidence to show the corporation's employment record in 1941, and the plaintiffs were required to make such a showing if reliance were to be placed thereon as controlling.

It is contended by the plaintiffs that the provision relied on by the commission is one dealing only with the definition of "employer" and has no bearing on the question of when a contribution becomes due and payable. The contention may not be sustained. Obviously a contribution cannot become due and payable from a corporation before it qualifies as an employer. A construction in accord with this view was incorporated by the Employment Commission in its rule 37.6, wherein it was provided: "An employing unit upon becoming a subject employer during any calendar year shall file with the Commission within fifteen days thereafter, quarterly contributions and earnings reports for each completed quarter in that calendar year.

"Contributions for these quarters are due at the end of the quarter in which the employer became subject. . . ." (Rules and Regulations on the California Unemployment Insurance Act, Rule 37.6 [1940].) The Employment Commission was expressly authorized to "adopt, amend or rescind regulations for the administration of this act. . . ." (Stats. 1939, p. 3007.) The foregoing rule would appear to be within the power thus granted.

In recognition of the weight which may be accorded ad-

ministrative interpretations and practices, as well as the plain meaning of the statutory language itself, it must be concluded that contributions from the plaintiff corporation for the first two calendar quarters of 1942 did not become due and payable until after the 20th of September, 1942; that the three-year period of the statute of limitations had not expired on the 15th day of September, 1945, as to those contributions, and that the period was properly extended as to contributions for those quarters as well as all other quarters involved in the assessment.

The judgment is affirmed.

Gibson, C. J., Carter, J., Traynor, J., Schauer, J., Spence, J., and McComb, J., concurred.