[L. A. No. 26426.   In Bank.   Oct. 2, 1962.]

DOUGLAS AIRCRAFT COMPANY, INC., Plaintiff and Respondent, v. ALAN CRANSTON, as State Controller, Defendant and Appellant.

Stanley Mosk, Attorney General, John F. Hassler and Bonnie Lee Martin, Deputy Attorneys General, for Defendant and Appellant.

Louis Lieber, Jr., Elmer J. Stone and William D. Craig for Plaintiff and Respondent.

TRAYNOR, J.—In 1959 the Legislature enacted the Uniform Disposition of Unclaimed Property Act. (Code Civ. Proc., §§ 1500-1527.) The act defines abandoned property (§§ 1502-1508) and requires that its holder shall report (§ 1510) and pay or deliver it to the State Controller (§ 1512). The statute of limitations is not a defense to such reporting and payment or delivery (§ 1515), and the act applies to property that was abandoned before it took effect (§ 1510, subd. (g)). It provides for notice to the owner by publication and otherwise (§§ 1510, subd. (e), 1511). The owner may appear at any time and claim the property from the Controller after it has been delivered to him (§§ 1517-1520). Delivery to the Controller is a defense to any action by the owner against the holder. (§ 1513.) ■ The objectives of the act are to protect unknown owners by locating them and restoring their property to them and to give the state rather than the holders of unclaimed property the benefit of the use of it, most of which experience shows will never be claimed.

After the act became effective, Douglas Aircraft Company brought this action against the Controller for declaratory relief with respect to over $17,000 in unpaid wage claims for work done in California on which the statute of limitations had

run before the effective date of the act. Douglas performs government and private contracts. In the past it has credited unclaimed wages arising out of its contracts with the United States to the United States, and the Controller makes no claim that such wages should be reported or paid to him. He contends, however, that Douglas is required to report and pay unclaimed wages arising out of work done on nongovernment contracts to the extent that such wages are ascertainable from the available records of Douglas (§ 1510, subd. (g)) whether or not the statute of limitations had run on the claims for such wages before the effective date of the act. The trial court held that Douglas could not constitutionally be required to pay wage claims to the Controller on which the statute of limitations had run before the effective date of the act. The Controller appeals.

Douglas contends that the California Constitution precludes the Legislature from abrogating the defense of the statute of limitations after the statute has run. (See *Chambers* v. *Gallagher*, 177 Cal. 704, 708-709 [171 P. 931]; *Chambers* v. *Gibson*, 178 Cal. 416, 417 [173 P. 752].) It further contends that even if the generally applicable California rule were otherwise, the due process clauses of the United States and California Constitutions would preclude requiring it to report and pay wage claims on which the limitations had run under the circumstances of this case. In this respect it asserts that owing to its reliance on the statute of limitations, it has not kept records that would enable it, except at unreasonable expense, to invoke the act's protection against double liability (§ 1513) and contends that to expose it to such liability would deny due process of law. (See *Standard Oil Co.* v. *New Jersey*, 341 U.S. 428, 442-443 [71 S.Ct. 822, 95 L.Ed. 1078]; *Western Union Tel. Co.* v. *Pennsylvania*, 368 U.S. 71 [82 S.Ct. 199, 201, 7 L.Ed.2d 139].)

The Controller contends that the rule of *Chambers* v. *Gallagher*, 177 Cal. 704 [171 P. 931], that the defense of the statute of limitations cannot be abrogated after the statute has run should be limited to cases in which a prescriptive title has been acquired or the liability was created by statute. (See *William Danzer Co.* v. *Gulf & S. I. R.R. Co.*, 268 U.S. 633, 637 [45 S.Ct. 612, 69 L.Ed. 1126].) With respect to contract claims he urges that we adopt the rule of the United States Supreme Court that the due process clause does not prohibit abrogating the defense of the statute of limitations after the statute has run. (See *Campbell* v. *Holt*, 115 U.S. 620, 628

[6 S.Ct. 209, 29 L.Ed. 483] ; *Chase Securities Corp.* v. *Donaldson,* 325 U.S. 304, 315-316 [65 S.Ct. 1137, 89 L.Ed. 1628].) He also contends that the act adequately protects Douglas from the risk of double liability and that there are no special circumstances in this case that would make the abrogation of the defense of the statute of limitations a denial of due process to Douglas.

We need not resolve these conflicting constitutional contentions unless it clearly appears that the act provides for the retroactive abrogation of the defense of the statute of limitations. Section 3 of the Code of Civil Procedure provides that "No part of it is retroactive, unless expressly so declared." (See also *Di Genova* v. *State Board of Education,* 57 Cal.2d 167, 172-173 [18 Cal.Rptr. 369, 367 P.2d 865] ; *Corning Hospital Dist.* v. *Superior Court,* 57 Cal.2d 488, 494 [20 Cal.Rptr. 621, 370 P.2d 325].) ▇▇▇ The law governing changes in the statute of limitations is summarized in *Evelyn, Inc.* v. *California Emp. Stab. Com.,* 48 Cal.2d 588, 592 [311 P.2d 500] : "The extension of the statutory period within which an action must be brought is generally held to be valid if made before the cause of action is barred. (*Weldon* v. *Rogers,* 151 Cal. 432 [90 P. 1062].) The party claiming to be adversely affected is deemed to suffer no injury where he was under an obligation to pay before the period was lengthened. This is on the theory that the legislation affects only the remedy and not a right. (*Mudd* v. *McColgan,* 30 Cal.2d 463 [183 P.2d 10] ; *Davis & McMillan* v. *Industrial Acc. Com.,* 198 Cal. 631 [246 P. 1046, 46 A.L.R. 1095] ; 31 Cal.Jur.2d 434.) An enlargement of the limitation period by the Legislature has been held to be proper in cases where the period had not run against a corporation for additional franchise taxes (*Edison Calif. Stores, Inc.* v. *McColgan,* 30 Cal.2d 472 [183 P.2d 16]), against an individual for personal income taxes (*Mudd* v. *McColgan, supra,* 30 Cal. 2d 463), and against a judgment debtor (*Weldon* v. *Rogers, supra,* 151 Cal. 432). ▇▇▇ It has been held that unless the statute expressly provides to the contrary any such enlargement applies to matters pending but not already barred. (*Mudd* v. *McColgan, supra,* 30 Cal.2d 463.) "

These rules afford warning to potential defendants that until the statute of limitations has run it may be extended, whereas after it has run, they may rely upon it in conducting their affairs. The keeping of records, the maintenance of reserves, and the commitment of funds may all be affected by such reliance, particularly in a well-organized enterprise that seeks

466

to operate efficiently. To defeat such reliance does more than deprive obligors of windfalls; it deprives them of the ability to plan intelligently with respect to stale and apparently abandoned claims. In view of these considerations, we believe that in enacting the Uniform Disposition of Unclaimed Property Act the Legislature would have expressed itself in unmistakable terms had it rejected the established rules governing the interpretation of statutes of limitations.

Section 1515 of the Code of Civil Procedure provides that ''The expiration of any period of time specified by statute or court order, during which an action or proceeding may be commenced or enforced to obtain payment of a claim for money or recovery of property, shall not prevent the money or property from being presumed abandoned property, nor affect any duty to file a report required by this chapter or to pay or deliver abandoned property to the State Controller.'' This section does not expressly provide that it shall be retroactive or apply to claims that were already barred when it was enacted. Accordingly, under section 3 of the code and the rules set forth in the *Evelyn* case it must be interpreted as applying only to claims on which the statute of limitations had not run on the effective date of the act. As to such claims, and as to claims that will arise in the future, however, it prevents the running of the statute applicable between the holder and the owner from barring the duty of the holder to report and pay to the Controller.

There is nothing in subdivisions (e) and (g) of section 1510 that compels giving section 1515 a different interpretation. Subdivision (e) provides: ''If the holder of property presumed abandoned under this chapter knows the whereabouts of the owner and if the owner's claim has not been barred by the statute of limitations, the holder shall, before filing the annual report, communicate with the owner and take necessary steps to prevent abandonment from being presumed. The holder shall exercise reasonable diligence to ascertain the whereabouts of the owner.'' This subsection deals with the continuing situation in the administration of the act arising from the fact that frequently the statute of limitations against the owner will have run before the property is presumed abandoned and required to be reported. In such cases subdivision (e) provides that there is no duty to attempt to locate or communicate with the owner. It does not provide, however, that the bar of the statute is inapplicable against the Controller if it had run before the effective date of the act.

█ Subdivision (g) of section 1510 provides: "The initial report filed under this chapter shall include all items of property held for another person which are ascertainable from the available records of the holder, which items of property would have been presumed abandoned if this chapter had been in effect at and after the time such property first became payable, demandable or returnable; . . . All items of property, less proper charges and offsets, other than unclaimed funds, which on January 1, 1949 appeared from the available records to be held for another person and were thereafter without notice to the owner or without prior approval of any regulatory or licensing authority of this State transferred or credited by the holder directly to capital or surplus or undivided profits shall be deemed to be subject to the provisions of this chapter and shall be included within the initial report." This section is expressly made retroactive and makes clear that existing abandoned property is subject to the act. Such property includes major categories as to which the statute of limitations had not run on the effective date of the act, such as obligations of financial institutions (Code Civ. Proc., § 348) and trustees (*Davenport* v. *Davenport Foundation,* 36 Cal.2d 67, 75 [222 P.2d 11]; *State* v. *Standard Oil Co.,* 5 N.J. 281, 298-304 [74 A.2d 565]) and other obligations upon which the statute does not begin to run until a demand has been made. Thus, it is not necessary to imply a provision removing the bar of the statute after it had run to give effect to subdivision (g). That subdivision defines the property that must be included in the initial report to the Controller, but it is not directed to the statute of limitations, which is dealt with in section 1515. Section 1515 contains no provision retroactively removing the bar of the statute if it had run before the effective date of the act. We cannot imply such a provision in subdivision (g), for the rule against retroactive construction requires that "a statute should be given the least retroactive effect that its language reasonably permits." (*Corning Hospital Dist.* v. *Superior Court, supra,* 57 Cal.2d 488, 494; *Interinsurance Exchange* v. *Ohio Cas. Ins. Co., ante,* pp. 142, 149 [23 Cal.Rptr. 592, 373 P.2d 640].)

It is true that the draftsmen of the uniform act indicated that they believed the provision on which section 1515 is based would apply retroactively (9A Uniform Laws Annotated pp. 267-269) and that similar provisions of other statutes have been so interpreted. (*Evans Products Co.* v. *Fry,* 307 Mich. 506 [12 N.W.2d 448, 461]; *In re Philadelphia Electric Co.,* 352

Pa. 457 [43 A.2d 116, 119]; *Connecticut Mut. Life Ins. Co.* v. *Moore*, 297 N.Y. 1 [74 N.E.2d 24, 27].) The draftsmen, however, appear to have been preoccupied with the problem of whether the statute of limitations applicable between the holder and owner could be made inapplicable to the duty to report and pay to the state even as to claims not barred when the act took effect. It is also significant that in adopting the uniform act the Legislature omitted the provision that it should be construed "to make uniform the law of those states which enact it." (Uniform Disposition of Unclaimed Property Act, § 29, 9A Uniform Laws Annotated, p. 274.) Although the committee report recommending adoption of the uniform act in California referred to the provision making the statute of limitations inapplicable against the state, it did not state that the provision would apply retroactively to claims that were already barred when the statute took effect. (Report of the Escheat Subcommittee of the Committee on Judiciary, Abandoned Property—State Acquisition and Recovery by Rightful Owner, 20 Assembly Interim Committee Reports 1957-1959, No. 4, p. 15.) Accordingly, the California rule of construction against retroactivity is applicable here.

The judgment is affirmed.

Gibson, C. J., Schauer, J., McComb, J., Peters, J., White, J., and Tobriner, J., concurred.