[Civ. No. 27897.   Second Dist., Div. Three.   Oct. 15, 1965.]

OCCIDENTAL LIFE INSURANCE COMPANY OF CALI-
FORNIA, Plaintiff and Respondent, v. ALAN CRAN-
STON, as State Controller, etc., Defendant and Ap-
pellant.

Stanley Mosk and Thomas C. Lynch, Attorneys General, and Ariel C. Hilton, Deputy Attorney General, for Defendant and Appellant.

Adams, Duque & Hazeltine, Henry O. Duque and Bruce A. Beckman for Plaintiff and Respondent.

FORD, J.—This is an appeal by the Controller of the State of California from a judgment that Occidental Life Insurance Company of California recover the sum of $8,879.90 which that company had paid to the Controller on the assumption that it was required to do so under the provisions of the Uniform Disposition of Unclaimed Property Act (Code Civ. Proc., §§ 1500-1527) which was enacted in 1959. That sum had been paid prior to the determination in 1962 of the case of *Douglas Aircraft Co.* v. *Cranston,* 58 Cal.2d 462 [24 Cal. Rptr. 851, 374 P.2d 819].

In the *Douglas* case the nature of the Uniform Disposition of Unclaimed Property Act was succinctly set forth as follows (58 Cal.2d, at p. 463) : ''The act defines abandoned property (§§ 1502-1508) and requires that its holder shall report (§ 1510) and pay or deliver it to the State Controller (§ 1512). The statute of limitations is not a defense to such reporting and payment or delivery (§ 1515), and the act applies to prop-

erty that was abandoned before it took effect (§ 1510, subd. (g)). It provides for notice to the owner by publication and otherwise (§§ 1510, subd. (e), 1511). The owner may appear at any time and claim the property from the Controller after it has been delivered to him (§§ 1517-1520). Delivery to the Controller is a defense to any action by the owner against the holder. (§ 1513.) The objectives of the act are to protect unknown owners by locating them and restoring their property to them and to give the state rather than the holders of unclaimed property the benefit of the use of it, most of which experience shows will never be claimed." (See Note, 98 A.L.R.2d 304.)

The controversy presently before this court arose upon the determination of the *Douglas* case wherein the Supreme Court stated (58 Cal.2d, at p. 466): "Section 1515 of the Code of Civil Procedure provides that 'The expiration of any period of time specified by statute or court order, during which an action or proceeding may be commenced or enforced to obtain payment of a claim for money or recovery of property, shall not prevent the money or property from being presumed abandoned property, nor affect any duty to file a report required by this chapter or to pay or deliver abandoned property to the State Controller.' This section does not expressly provide that it shall be retroactive or apply to claims that were already barred when it was enacted. Accordingly, under section 3 of the code [of Civil Procedure] and the rules set forth in the *Evelyn* case [*Evelyn, Inc.* v. *California Emp. Stab. Com.*, 48 Cal.2d 588 (311 P.2d 500)] it must be interpreted as applying only to claims on which the statute of limitations had not run on the effective date of the act. As to such claims, and as to claims that will arise in the future, however, it prevents the running of the statute applicable between the holder and the owner from barring the duty of the holder to report and pay to the Controller."

The present case was submitted to the trial court upon an agreed statement of facts and findings of fact were waived. A portion of the agreed statement consisted of a copy of the unclaimed property report filed by the life insurance company in 1960 which covered the period ending on December 31, 1959, and a copy of a similar report filed in 1961 for the period ending on December 31, 1960. The items involved may be generally described as consisting of amounts payable under insurance policies, amounts payable as refunds (principally of premiums), amounts payable as agents' commissions, and

amounts payable as salaries. One paragraph of the agreed statement was as follows: "Each item listed in Petitioner's 1960 and 1961 unclaimed property reports (Exhibits 'A' and 'B'), refund of which was demanded by Petitioner by letter dated October 31, 1962 (Exhibit 'C') and Claim for Refund dated February 18, 1963 (Exhibit 'F'), accrued and became payable by Petitioner more than four (4) years prior to September 18, 1959."

From the nature of the items involved, the statute of limitations applicable to a particular item would be one prescribing a period which would not be in excess of four years. (See Code Civ. Proc., §§ 337, 339.) As noted hereinabove, it was agreed that each item "accrued and became payable by Petitioner more than four (4) years prior to September 18, 1959," the effective date of the Uniform Disposition of Unclaimed Property Act. █ "It is the general rule that a cause of action accrues when a suit may be maintained thereon, and the statute of limitations then begins to run." (*Maguire* v. *Hibernia S. & L. Soc.*, 23 Cal.2d 719, 733 [146 P.2d 673, 151 A.L.R. 1062].) In the light of the facts agreed upon, which were expressly stipulated to be "deemed as admitted into and fully established by evidence adduced at the hearing" of the matter, under the circumstances of this case it would not be reasonable to presume that, as to any item, a person entitled thereto is laboring under a disability of such a nature as to suspend the running of the statute of limitations. Consequently, under the reasoning of the *Douglas* case the life insurance company was not required to report and pay to the Controller the moneys herein involved at the time such reports and payments were made.

█ The Controller contends that by forwarding the moneys to him as abandoned property the life insurance company waived any right to rely upon the statute of limitations in support of its position. That contention is untenable under the circumstances of this case. █ "To constitute a waiver there must be an intentional relinquishment of a known right, or conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished." (*Dalzell* v. *Northwestern Mutual Ins. Co.*, 218 Cal.App.2d 96, 101-102 [32 Cal.Rptr. 125].)

█ The question remaining is whether the life insurance company is entitled to recover from the Controller the sum of money paid by it under a mistake of law which became evident to it upon the subsequent determination of the *Douglas*

case by the Supreme Court. It is to be noted that California did not adopt the language of section 18 of the Uniform Disposition of Unclaimed Property Act relating to the deposit of funds (see Handbook of the National Conference of Commissioners on Uniform State Laws, 1954, pp. 138, 151), but did provide in section 1517 of the Code of Civil Procedure for the disposition of money received under the act. Section 1517 is in part as follows: "(a) All money received under this chapter, including the proceeds from the sale of property under Section 1516, shall be deposited in the Unclaimed Property Fund in an account titled 'Abandoned Property.'

"(b) All money in the abandoned property account in the Unclaimed Property Fund is hereby continuously appropriated to the State Controller, without regard to fiscal years, for expenditure for the following purposes:

"(1)     .     .     .     .     .     .     .     .     .     .     .

"(2) For refund, to the person[1] making such deposit, of amounts, including overpayments, deposited in error in such funds; . . ."

Under established rules of statutory construction (see *Select Base Materials, Inc.* v. *Board of Equalization,* 51 Cal.2d 640, 645 [335 P.2d 672]), it clearly appears to be the legislative intent that the payor shall recover any sum of money that he has erroneously paid to the Controller. There is no reasonable basis for a conclusion that a payment made under a mistake of law is intended to be excluded from the scope of the relief so afforded. Consequently, the life insurance company was entitled to recover the sum of money paid by it because of its misapprehension as to the meaning of the act prior to the clarification afforded by *Douglas Aircraft Co.* v. *Cranston, supra,* 58 Cal.2d 462.

The judgment is affirmed.

Shinn, P. J., and Kaus, J., concurred.

---

[1]Section 1501 of the Code of Civil Procedure is in part as follows: "As used in this chapter, unless the context otherwise requires: . . . (g) 'Person' means any individual, business association, government or political subdivision, public authority, estate, trust, two or more persons having a joint or common interest, or any other legal or commercial entity other than any public corporation or utility."