851 F.Supp. 1453 (1994)
RESOLUTION TRUST CORPORATION, in its corporate capacity and as Receiver for:
American Interstate Savings Association, F.A.; Arrowhead Pacific Federal Savings Bank; Atlantic Financial F.S.B.; Beach Federal Savings Bank; Brookside Federal Savings and Loan Association; Cabrillo Federal Savings Bank; Charter Savings Bank, F.S.B.; City Federal Savings & Loan Association, F.A.; Columbia Savings & Loan Association; Constitution Federal Savings Association; County Bank, F.S.B.; Executive Savings Bank, F.S.B.; Far West Savings and Loan Association, F.A.; Financial Federal Savings & Loan Association; First California Savings, F.S.A.; First Federal Savings & Loan Association; First Network Federal Savings Bank; Founders Federal Savings & Loan Association; Gateway Federal Savings Bank; Gibraltar Savings, F.A.; Gold River Savings Bank; the Guardian Federal Savings & Loan Association; Heartland Savings and Loan Association; Huntington Federal Savings and Loan Association; Imperial Federal Savings Association; Independence Savings and Loan Association; Investment Federal Savings & Loan Association; Liberty Federal Savings Bank; Malibu Savings Bank, F.S.B.; Lincoln Savings & Loan Association, F.A.; Mercury Federal Savings & Loan Association; Midwest Savings Association, F.A.; Pacific Coast Federal Savings Association of America; Pacific Savings Bank; Peninsula Federal Savings & Loan Association; Perpetual Savings Association, a Federal Savings and Loan Association; Progressive Savings Bank, F.S.B.; Rancho Bernardo Federal Savings Bank; Royal Oak Savings and Loan Association; Santa Barbara Federal Savings and Loan Association; Santa Paula Savings and Loan Association; Saratoga Federal Savings and Loan Association; Security Federal *1454 Savings Association; Sierra Savings & Loan Association, F.A.; Southwest Federal Savings Association; Time Federal Savings and Loan Association; Unified Savings, a Federal Savings and Loan Association; Unity Savings and Loan Association, F.A.; Valley Federal Savings and Loan Association; Washington Savings and Loan Association; Westco Savings Bank, F.S.B.; Western Empire Federal Savings and Loan Association; Westport Federal Savings Bank; Westwood Savings and Loan Association; and Wilshire Federal Savings & Loan Association, Plaintiff,
v.
STATE OF CALIFORNIA; Gray Davis as Controller of the State of California; Daniel E. Lungren as Attorney General of the State of California; and Pacific Heritage Bank, Defendants.
RESOLUTION TRUST CORPORATION, in its corporate capacity and as Receiver, etc., et al., Plaintiff,
v.
STATE OF CALIFORNIA, et al., Defendants.
No. CV 92-6230 RG.
United States District Court, C.D. California.
May 4, 1994.
*1455 Susan J. Triplett, Jonathan M. Gordon, William E. Berner, Jr., McClintock, Weston, Benshoof, Rochefort, Rubalcava & MacCuish, and Pamela R. Piland, Los Angeles, CA, for Resolution Trust Corp. (Mark P. Hileman, Asst. Gen. Counsel and Kevyn D. Orr, Senior Counsel, Resolution Trust Corp., Washington, DC, of counsel).
Daniel E. Lungren, Atty. Gen. State of Cal. and Yeoryios C. Apallas, Deputy Atty. Gen., San Francisco, CA, for defendant.

MEMORANDUM AND ORDER RE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
GADBOIS, District Judge:
The plaintiff Resolution Trust Corporation ("RTC") in its Corporate Capacity and as Receiver for 52 financial institutions placed into receivership between August 1989 and October 1992, moves this Court for summary judgment on its claims for declaratory and injunctive relief against defendants the State of California (the "State" or "California") and Gray Davis as Controller of California.
The RTC advances three grounds in support of its motion:
1. The State's attempt to take custody of unclaimed federal deposit insurance funds pursuant to California's Unclaimed Property Law, Cal.Code Civ.Proc. §§ 1500, et seq. ("UPL"), is barred by the Supremacy Clause, U.S. Const. art. VI, cl. 2, because regulation of federal property is involved;
2. The State's UPL is preempted under the Supremacy Clause, U.S. Const. art VI, cl. 2, by the provisions of 12 U.S.C. § 1822(e) (as in effect prior to June 28, 1993); and
3. The State is not a "depositor of record" or other person or entity entitled to make a claim for deposit insurance under the language of section 1822(e) (as in effect prior to June 28, 1993) and the regulations promulgated thereunder.

BACKGROUND
Congress created the RTC as part of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, ("FIRREA"), 12 U.S.C. § 1441a(b)(1), et seq., and directed it to "manage and resolve all cases involving depository institutions." 12 U.S.C. § 1441a(b)(3)(A).
In its capacity as receiver of a failed financial institution, the RTC chooses one of several methods of paying insured depositors depending on which method will be least costly to taxpayers. In each case, insurance benefits are made available to depositors of the failed institution either through direct payment by the RTC or by transferring the insured amount to another financial institution, commonly known as an acquiring institution.[1] In most instances, depositors claim insurance benefits either by cashing their checks or opening an account with the acquiring institution.

12 U.S.C. § 1822(e)
Congress enacted 12 U.S.C. § 1822(e) to govern the disposition of deposits which remain unclaimed after an institution has gone into receivership. Section 1822(e) provides, in relevant part:
If, after the Corporation[2] shall have given at least three months' notice to the depositor by mailing a copy thereof to his last-known address appearing on the records of the depository institution in default, any depositor in the depository institution in default shall fail to claim his insured deposit from the Corporation within eighteen months after the appointment of the receiver for the depository institution, or shall fail within such period to claim or arrange to continue the transferred deposit within the new bank or with the other insured depository institution which assumes liability therefor, all rights *1456 of the depositor against the Corporation with respect to the insured deposit ... shall be barred ... The amount of any transferred deposits not claimed within such eighteen months' period, shall be refunded to the Corporation.

Former text of 12 U.S.C. § 1822(e) (emphasis added).[3] In enacting this statute, Congress chose to place a specific notice period and time limitation on claims for insurance benefits, with any unclaimed funds to be refunded ultimately to the RTC by the transferee institutions.

California's Claim
The State Controller of California, Gray Davis ("Controller"), contends that certain unclaimed deposit insurance benefits should be turned over to the State as abandoned property under the State's Unclaimed Property Law ("UPL"), Cal.Code Civ.Proc. §§ 1500, et seq.[4] The Controller also contends that under California law, he is entitled to audit the books and records of failed institutions in order to determine the amounts of unclaimed deposits to be turned over to the State.
Deposit accounts are deemed to be abandoned property, escheatable to the State, after the account has been dormant (i.e., inactive) for a period of three years. Cal. Code Civ.Proc. § 1513(a). Following this statutory period of inactivity, and after reasonable notice is given to the deposit holder, Cal.Code Civ.Proc. § 1513.5, financial institutions are required to turn over abandoned property to the State, Cal.Code Civ.Proc. § 1532, where the monies are ultimately deposited in the State's General Fund. Cal. Code Civ.Proc. § 1564(c).[5] The State has full use of these funds, but must return the money to the rightful owners or their heirs upon demand. Cal.Code Civ.Proc. § 1540. There is no time limit within which the rightful owners may claim their funds from the State.

DISCUSSION
Defendants do not dispute the statement of uncontroverted facts submitted by plaintiff in support of its motion for summary judgment. Therefore, only legal issues remain in this case.

A. The State Controller's Claim Violates the Supremacy Clause Because it Constitutes Regulation of Federal Property.

Plaintiff first argues that the Controller's claim to the deposit insurance funds at issue is an impermissible attempt to regulate and interfere with exclusive federal activities and property in violation of the Supremacy Clause, U.S. Const. art. VI, cl. 2.
States may not directly regulate the federal government's activities or property. Hancock v. Train, 426 U.S. 167, 178-80, 96 S.Ct. 2006, 2012-13, 48 L.Ed.2d 555 (1976); State of Arizona v. Bowsher, 935 F.2d 332, *1457 334 (D.C.Cir.), cert. denied, ___ U.S. ___, 112 S.Ct. 584, 116 L.Ed.2d 609 (1991). The Constitution itself declares that "Congress shall have Power to dispose of and make all needful Rules and Regulations respecting the ... Property belonging to the United States." U.S. Const. art. IV, § 3, cl. 2.
The federal government has a vested property interest in money set aside to meet demands for specific payments, such as federal deposit insurance. See Buchanan v. Alexander, 45 U.S. (4 How.) 20, 20-21, 11 L.Ed. 857 (1846) (the Supreme Court prohibited creditors from garnishing money held by purser of the frigate Constitution to pay seamen's wages, stating, "[s]o long as money remains in the hands of a disbursing officer, it is as much the money of the United States, as if it had not been drawn from the treasury"); State of Arizona v. Bowsher, 935 F.2d at 334 ("[w]hen the United States sets aside money for the payment of specific debts, it does not thereby lose its property interest in that money"). Cf. United States v. 5,644,540.00 in U.S. Currency, 799 F.2d 1357, 1365 (9th Cir.1986) (California Controller has no claim under the California Unclaimed Property Law to moneys seized by federal government during criminal arrest because all right, title, and interest in the property vested in the government at the time of the illegal transaction). Moreover, federal deposit insurance benefits remain the property of the federal government unless and until they are claimed according to the statutory scheme set forth in 12 U.S.C. § 1822(e).[6]
This Court is persuaded by the D.C. Circuit's Supremacy Clause analysis in State of Arizona v. Bowsher, 935 F.2d 332, 334 (D.C.Cir.), cert. denied, ___ U.S. ___, 112 S.Ct. 584, 116 L.Ed.2d 609 (1991). In Bowsher, twenty-three states brought an action against the United States' Comptroller General and Secretary of the Treasury claiming the right to custody, under the states' respective unclaimed property laws, to monies held in the United States Treasury. The federal government held the funds pursuant to 31 U.S.C. § 1322, which establishes a trust fund for unclaimed monies that various federal agencies might owe to persons whose whereabouts are unknown. 935 F.2d at 333-34.
The plaintiffs in Bowsher, like the Controller in the instant case, argued that taking custody of the funds under the states' unclaimed property laws would further the purpose of the federal government to make the unclaimed monies available to the rightful owners. Id. at 334. However, the D.C. Circuit disagreed, finding that the states' plan "would amount to direct regulation of federal property":
In extracting funds from the Treasury, the states would effectively subordinate federal property to their own laws and appropriate that property, at least for a period, for themselves. While the states protest that they merely wish to `further[] the federal government's presumed purpose to return the unclaimed property to its true owners,' ... the Supremacy Clause does not permit them to take over a federal program just because they think they can do it better.
Id.
Likewise, here, by "standing in the shoes" of absent depositors, the State would be subordinating federal deposit insurance benefits to its own laws and appropriating these funds for itself, at least for some period of time. Put another way, the State's attempt to claim control of the funds to return them to their rightful owners (even after the statutory period has passed) amounts to direct and impermissible regulation of federal property and violates the Supremacy Clause.

B. 12 U.S.C. § 1822(e) Preempts the State's UPL.

The RTC's second argument is that section 1822(e) preempts the State's UPL with regard to unclaimed deposit insurance funds. In Louisiana Pub. Serv. Comm'n v. Fed'l Communications Comm'n, 476 U.S. 355, 368-69, 106 S.Ct. 1890, 1898-99, 90 L.Ed.2d 369 (1986), the Supreme Court set out six elements to determine whether preemption occurs. These are: (1) when Congress, in enacting a federal statute, expresses a clear intent to preempt state law, (2) when there is outright or actual conflict between state and federal law, (3) where compliance *1458 with both state and federal law is in effect physically impossible, (4) where there is implicit in federal law a barrier to state regulation, (5) where Congress has legislated comprehensively, thus occupying an entire field of regulation and leaving no room for the States to supplement federal law, or (6) where the state law stands as an obstacle to the accomplishment and execution of the full objectives of Congress.

1. Did Congress clearly intend § 1822(e) to supersede state law?

For the purpose of determining preemption, this Court must assume "that the historic police powers of the States were not to be superseded by [a] Federal Act unless that was the clear and manifest purpose of Congress." Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947).
Section 1822(e) makes no express mention of Congress' intent to preempt state unclaimed property statutes. However, in 12 U.S.C. §§ 1821(c)(2)(C) and (c)(3)(C), Congress provided that the RTC, "[w]hen acting as conservator or receiver ... shall not be subject to the direction or supervision of ... any State in the exercise of the Corporation's rights, powers, and privileges." Thus, although this is not a "plain statement" of Congress' intent to preempt, see Will v. Michigan Dep't. of State Police, 491 U.S. 58, 65, 109 S.Ct. 2304, 2309, 105 L.Ed.2d 45 (1989), it does imply that Congress did not intend to allow the States to interfere with the RTC's specified functions, including collection and custody of unclaimed deposits.

2. Is there a conflict between the UPL and § 1822(e)?

The RTC argues that an actual conflict exists between the UPL and section 1822(e) because: (1) section 1822(e) provides for the ultimate return of unclaimed deposit insurance benefits to the RTC whereas the UPL permits the State to retain custody of the unclaimed funds until demand is made; and (2) the UPL provides for a perpetual claim period for the forgotten deposits rather than the eighteen months permitted by section 1822(e). This Court agrees.
The State argues that the UPL does not present a conflict with the federal scheme of section 1822(e), since the UPL requires the RTC to fulfill its mandate of returning the forgotten assets to the true owner or his conservator. In the event that the account is abandoned, (i.e., the depositor does not claim federal deposit insurance) during the statutory period, "the state merely acquires the right to demand payment of the accounts in the place of the depositors," Defendant's Memorandum of Points and Authorities, p. 26, for whom it will preserve the deposits until demand is made.
However, if the State's UPL is implemented in the way the State envisions, it would indefinitely extend the period mandated by § 1822(e) within which the depositor could claim deposit insurance funds and would also nullify § 1822(e)'s requirement that deposits not claimed within the limitations period be returned to the RTC. See In re Drexel Burnham Lambert Group, Inc., 151 B.R. 684, 692 (Bankr.S.D.N.Y.1993) (where the states sought to exercise "derivative" rights on behalf of absent creditors, the Bankruptcy Court held that the states' claims were preempted by federal bankruptcy laws because: (1) such claims would create a state-imposed extension of the federally-mandated bar date; and (2) such claims conflicted with the federal objective of maximizing distributions to a debtor's creditors). Given this actual conflict, the federal law must prevail. See Free v. Bland, 369 U.S. 663, 666, 82 S.Ct. 1089, 1092, 8 L.Ed.2d 180 (1962).

3. Is it impossible to comply with both state and federal law?

The Supreme Court has held that where "compliance with both federal and state regulations is a physical impossibility," federal law preempts state law to the extent of the conflict. Florida Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 142-43, 83 S.Ct. 1210, 1217-18, 10 L.Ed.2d 248 (1963). In the instant case, compliance with both state and federal law would be impossible since both entities cannot claim custody to the same funds.[7]See, e.g., Alabama v. Bowsher, 734 F.Supp. 525, 542 (D.D.C.1990) ("Section 1322 [of the federal statute] clearly places custodial *1459 rights to the monies with the Secretary (of the Treasury) and since both entities cannot have custody the Supremacy Clause requires that § 1322 take precedent. The states simply cannot claim a superior right to custody."). Likewise, the insolvent institutions involved herein cannot turn over unclaimed funds to both the State and the Receiver.[8]

4. There is implicit in federal law a barrier to state regulation.

The applicable test for whether a federal law presents a barrier to state regulation "is whether the matter on which the State asserts the right to act is in any way regulated by the Federal Act. If it is, the federal scheme prevails ..." Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 236, 67 S.Ct. 1146, 1155, 91 L.Ed. 1447 (1947).
California cannot dispute that FIRREA, which sets forth the comprehensive scheme to resolve the savings and loan crisis, meets this minimal test. Since the creation and disposition of deposit insurance funds is governed exclusively by federal law, see, e.g., RTC v. Elman, 949 F.2d 624, 627 (2d Cir. 1991) (FIRREA is "a federal statute that superimposes a new arrangement over the state law scheme"), California's regulation of those funds, even to hold them for the original depositors, should be barred.

5. Congress has legislated comprehensively, thus occupying an entire field of regulation and leaving no room for the States to supplement federal law.

By setting a specific time limitation on claims for deposit insurance (18 months) and mandating that unclaimed funds be returned to the RTC if not claimed within the limitations period, Congress has legislated comprehensively on the issue of the disposition of unclaimed deposits. This Court is not persuaded that the State's UPL supplements or can be incorporated into the federal scheme set forth in § 1822(e), as the State suggests.
Defendant relies on three Supreme Court decisions (involving state unclaimed property statutes) to support the contention that state law can "mesh" with the federal statutory scheme at issue here: United States v. Klein, 303 U.S. 276, 58 S.Ct. 536, 82 L.Ed. 840 (1938), Roth v. Delano, 338 U.S. 226, 70 S.Ct. 22, 94 L.Ed. 13 (1949), and Anderson Nat'l Bank v. Luckett, 321 U.S. 233, 64 S.Ct. 599, 88 L.Ed. 692 (1944).[9] The State argues that *1460 in accord with these decisions, the State, acting in its sovereign capacity and derivatively for the depositor, can claim custody and control of deposit insurance funds and not run afoul of the Supremacy Clause.
However, in each of the cited cases, the federal government did not regulate the funds at issue nor had any property interest in them. In fact, both Roth and Anderson acknowledged that the state statutes implicated did not frustrate any specific objectives underlying the federal banking laws or other federal regulations. See Roth, 338 U.S. at 230, 70 S.Ct. at 24 (a state's escheat laws might not be enforceable if they were "asserted at a time, in a manner or through such means as to interfere with the federal function of orderly liquidation or to conflict with federal law ..."); Anderson, 321 U.S. at 248-49, 64 S.Ct. at 607-08 ("the state's power to make such a demand [for unclaimed deposits in a national bank] cannot extend beyond its power under state law and the Federal Constitution"). Where, as here, the state's claims come into direct conflict with a federal statute and frustrate specific congressional goals, these cases are inapposite.

6. The state law stands as an obstacle to the accomplishment and execution of the full objectives of Congress.

Finally, this Court disagrees with the State's claim that incorporation of the UPL into the federal statute would not frustrate but rather further the policy objectives underlying § 1822(e). Congress created the RTC and specifically directed it to "contain, manage, and resolve failed savings associations," in a manner that "maximizes the net present value return from the sale or other disposition of institutions ... or the assets of such institutions" and "minimizes the amount of any loss realized in the resolution of cases." 12 U.S.C. §§ 1441a(b)(3)(C)(i) and (iv) (duties of the Corporation). With these duties in mind, Congress set the limitations period for deposit insurance claims at eighteen months. 12 U.S.C. § 1822(e) (as in effect prior to June 28, 1993).
The State asserts that by taking custody of the funds for the benefit of the rightful owners (or their heirs), it is furthering the Congressional goal of restoring public confidence in the savings and loan industry by reuniting depositors with their forgotten deposits.[10] To support this assertion, the State relies on certain statements made by the Chairman of the Subcommittee on Financial Institutions Supervision, Regulation, and Deposit Insurance, Mr. Neal of North Carolina, during debates on H.R. 890, precursor to the UDAA: "H.R. 890 would protect depositors who fail to file claims [within the 18 month period] by requiring the FDIC and the RTC to offer the insured deposits to the States to accept and hold under State abandoned property laws for a period of 10 years.... Only after this period had expired would the unclaimed funds revert back to the FDIC or the RTC or its successor, with all further claims to these funds barred."
However, these comments do not contradict Congress' objectives of recapturing unclaimed deposits. Even though the amended version of section 1822(e) (amended June 28, 1993) extends the claim limitation period by returning unclaimed funds to the states' custody for ten years, it nonetheless provides for the eventual return of the unclaimed funds to the RTC for future resolutions, not escheat to the state.
In sum, this Court holds that California's UPL is preempted by section 1822(e).

C. The State Is Not a Depositor and May Not Make a Claim under § 1822(e).

Finally, the RTC argues that aside from the preemption and Supremacy Clause arguments, a plain reading of section 1822(e) indicates that the State is not entitled to make an insurance claim on behalf of absent depositors.
Section 1822(e) provides for the claiming of deposit insurance by the "depositor ... appearing on the records of the depository institution...." The regulations also provide *1461 that an account owner may be insured through an agent or fiduciary, but this relationship must appear on the records of the insured institution. See 12 C.F.R. §§ 330.6, 330.4. However, neither the statute nor the regulations provide that a state may obtain insurance benefits for an absent depositor pursuant to unclaimed property laws.

CONCLUSION
Thus, IT IS HEREBY ORDERED AND ADJUDGED that:
1. The State's claims to possession, custody or control of unclaimed deposit insurance funds returnable to the RTC pursuant to 12 U.S.C. § 1822(e) (as in effect prior to June 28, 1993) violate the Supremacy Clause. U.S. Const. art. VI, cl. 2.
2. California's Unclaimed Property Law, Cal.Code Civ.Proc. §§ 1500, et seq., is preempted by 12 U.S.C. § 1822(e) (as in effect prior to June 28, 1993) with respect to unclaimed deposit insurance funds.
3. As a matter of law, the State is not an entity expressly entitled to claim deposit insurance benefits on behalf of absent depositors under 12 U.S.C. § 1822(e) (as in effect prior to June 28, 1993).
4. The RTC is entitled to an accounting and the return of all unclaimed deposit insurance funds presently in the custody of the State or held in the Joint Trust Account that represent insurance benefits unclaimed by the depositor within the statutory period specified in 12 U.S.C. § 1822(e) (as in effect prior to June 28, 1993).
5. Defendants State of California and Gray Davis, as Controller of the State of California, are hereby permanently enjoined from conducting audits of or making claims or demands to acquiring institutions regarding unclaimed deposit insurance funds returnable to the RTC under 12 U.S.C. § 1822(e) (as in effect prior to June 28, 1993), or otherwise interfering in any way with the RTC's recovery of such funds from acquiring institutions.
6. The Counterclaims of defendants State of California and Gray Davis, as Controller of the State of California, are hereby dismissed with prejudice.
7. The plaintiff RTC shall have and recover from defendants State of California and Gray Davis, as Controller of the State of California, its costs of suit herein.
IT IS SO ORDERED.
NOTES
[1] The funds used to pay the depositors are federal funds, derived either from the U.S. Treasury or borrowed by the RTC from the Federal Finance Bank.
[2] The term "Corporation" refers to the Federal Deposit Insurance Corporation. 12 U.S.C. § 1811 (1989). Section 1822(e) is made equally applicable to RTC receiverships by 12 U.S.C. § 1441a(b)(4).
[3] On June 28, 1993, Congress amended 18 U.S.C. § 1822(e). See "The Unclaimed Deposits Amendments Act of 1993," ("UDAA") 103 P.L. 44, 1993 H.R. 890; 107 Stat. 220. The UDAA applies both retroactively and prospectively. That part which applies prospectively, i.e., applicable to banks entering receivership after June 28, 1993, grants the states a greater role in locating absent depositors by giving the states custody of the unclaimed accounts for a period of ten years following expiration of the eighteen month statutory bar date. However, if the depositor does not make a claim with the state during this ten-year period, the "deposit shall immediately be refunded to the Corporation and become its property." UDAA Sec. 1; 12 U.S.C. § 1822(e)(5).

UDAA section 2(b) applies retroactively and provides that for receiverships in progress at the time the UDAA was enacted, the original version of 1822(e) will apply, except that no claim made by an insured depositor for insurance funds will be barred so long as it is made before the termination of the receivership.
[4] The Controller and the RTC entered into a Standstill Agreement as well as an agreement for the creation of a Joint Trust Account to hold disputed funds received from the insolvent financial institutions on August 31, 1991, and March 19, 1992. Notices have been sent to all institutions who acquired deposits from an RTC receivership instructing them to deposit unclaimed funds in the Joint Trust Account. In October 1992, the Standstill Agreement was terminated and this lawsuit ensued. The Joint Trust Account remains in effect, and as of December 31, 1993, held in excess of $14.5 million.
[5] California Code of Civil Procedure § 1531 requires the Controller to mail notices to the last known addresses of owners of $25 or more of unclaimed funds, advertise in newspapers of general circulation the names of owners of $50 or more of the unclaimed funds and maintain a permanent registry of all names of owners of unclaimed property reported to the state as escheated property.
[6] If the depositor fails to make a claim within the statutory period set forth in § 1822(e), the statute dictates that the money shall be refunded to the Corporation.
[7] The State attempts to argue that there are really two different categories of funds at issue. First, the State argues that section 1822(e) is not applicable to deposits deemed abandoned prior to the institution's failure but not yet reported and delivered to the Controller ("pre-resolution funds"). These accounts, the State argues, should lawfully have been transferred to the State under Cal.Code Civ.Proc. § 1532.

Second, as for "post-resolution funds," i.e., accounts deemed abandoned during the eighteen month period provided by section 1822(e), the State contends that it is merely standing in the shoes of the rightful owners and should be permitted to take custody of the funds pursuant to the UPL.
The RTC quarrels with the State's reasoning, arguing that once an insolvent institution is placed into receivership, federal law controls, and there is no distinction between pre- and post-resolution deposits for the purposes of paying insurance claims. The RTC merely audits the financial records of the bank to determine what assets are available and does not look to see whether accounts on the books are "dormant" under state law. Furthermore, the RTC contends, it is not responsible for enforcing the State's UPL where the State is lax in enforcing its rights prior to the bank's failure.
For the purposes of this decision, this Court does not distinguish between pre- and post-resolution funds. Until claimed by the depositor of recorder, his heirs or assigns, federal deposit insurance funds remain the property of the federal government.
[8] This Court is aware of at least one interpleader action filed by an insolvent financial institution concerning whether to turn over disputed unclaimed funds to the State or the RTC. See First Federal Savings Bank v. State Treasury Dept. of the State of Texas and RTC as Receiver of First Federal Savings and Loan of San Antonio, Case No. SA 92-CA0947 (pending in the United States District Court for the Western District of Texas).
[9] In United States v. Klein, 303 U.S. 276, 58 S.Ct. 536, 82 L.Ed. 840 (1938), the Supreme Court held that Pennsylvania could escheat unclaimed property paid into the registry of the federal court and then transferred to a federal trust fund. The Supreme Court rejected the United States' sovereignty arguments, finding that the United States had no right, title or interest in the disputed funds. 303 U.S. at 280, 58 S.Ct. at 538.

In Roth v. Delano, 338 U.S. 226, 70 S.Ct. 22, 94 L.Ed. 13 (1949), the Court allowed states to escheat unclaimed dividends on proved claims of creditors of an insolvent national bank. Its predecessor, Anderson Nat'l Bank v. Luckett, 321 U.S. 233, 64 S.Ct. 599, 88 L.Ed. 692 (1944), held that the Constitution does not prohibit a state from escheating abandoned accounts of a solvent national bank.
[10] In point of fact, the State's UPL has not been successful in reuniting depositors with their "forgotten" deposits in most cases. The Controller's Office returns annually about $80 million to approximately 70,000 individuals or businesses. Yet, the State admits that this is only around 30% of the property received each year. Declaration of D. Robert Shuman, p. 3, ¶ 6. See Douglas Aircraft Co. v. Cranston, 58 Cal.2d 462, 463, 24 Cal.Rptr. 851, 374 P.2d 819 (1962) (recognizing that the majority of escheated funds are never claimed).