TRAVELERS EXPRESS CO., INC., a
Minnesota Corporation, Plaintiff,

v.

The STATE OF MINNESOTA and Jim
Lord, Treasurer, State of
Minnesota, Defendants.

Civ. No. 4–80–344.

United States District Court,
D. Minnesota,
Fourth Division.

Feb. 11, 1981.

---

Curtis D. Forslund, James A. Vose, George W. Soule, and Hildy B. Linehan, Gray, Plant, Mooty, Mooty & Bennett, Minneapolis, Minn., for plaintiff.

Warren R. Spannaus, Atty. Gen., and Karen G. Schanfield and Robert R. Nardi, Spec. Asst. Attys. Gen., St. Paul, Minn., for defendants.

## MEMORANDUM AND ORDER

MacLAUGHLIN, District Judge.

This is a declaratory judgment action in which the plaintiff, Travelers Express Co., Inc. (Travelers) and the defendants, the State of Minnesota (State) and its Treasurer, Jim Lord (Treasurer) both claim entitlement to $6,477,170.46. This sum represents the amount payable on certain money orders issued by Travelers that have never been presented for payment. The question now before the Court is one of statutory construction—whether Minnesota has the authority to take custody of sums payable on abandoned money orders which were sold outside of the State. The matter is now before the Court on cross motions for summary judgment on this issue.

FACTS

Travelers is a corporation incorporated under the laws of the State of Minnesota with its principal place of business in the State of Minnesota. It is engaged in the business of selling money orders to customers in every state of the nation. Travelers' books and records do not show the names or last known addresses of the purchasers of money orders, but they do show the state in which the money orders were sold. Some of the money orders are never presented for payment, in which case Travelers receives a windfall benefit.

Minnesota has adopted the Uniform Disposition of Unclaimed Property Act (hereinafter referred to as the U.P.A.). Minn.Stat. §§ 345.31–60. The U.P.A. authorizes the Treasurer to take custody of abandoned property, including abandoned money orders.[1] The property covered by the U.P.A. is presumed abandoned if left

---

1. Minnesota's U.P.A. provides for the custodial taking, not escheat, of unclaimed property that is presumed abandoned. Custodial acts do not cut off the property rights of the owner. "The

unclaimed for a designated number of years. The U.P.A. also requires every person holding unclaimed property to submit a report to the Treasurer when the property is presumed abandoned under the statute. Minn.Stat. § 345.41. Travelers submits annual reports to the State setting forth the amount of unclaimed money orders it has held for seven years. The U.P.A. permits the Treasurer to examine "the records of any person if he has reason to believe that such person has failed to report property" which is subject to the Act. Minn.Stat. § 345.53. The State, on behalf of itself and eleven other states, conducted an examination of Travelers' books pursuant to section 345.53. According to the report of this examination, Travelers held $6,477,170.46 in unclaimed money orders sold between January 1, 1955, and December 31, 1972, which the Treasurer believed was subject to Minnesota's U.P.A. The report divided the sum into three categories: (1) outstanding money orders sold in Minnesota—$90,007.83; (2) outstanding money orders sold in other states or territories for which there is no applicable escheat or custodial taking law in effect—$788,435.08; and (3) outstanding money orders sold in states other than Minnesota that are, for various reasons, not subject to that state's escheat or custodial taking law—$5,598,727.55.

On June 20, 1980, Travelers filed in this Court an action for declaratory judgment to determine who had the right to custody of the unclaimed money orders. On July 15, 1980, defendants filed their answer to the complaint. Defendant Treasurer also filed three counterclaims alleging the right to take custody of the unclaimed money orders, one counterclaim for each of the three categories of unclaimed money orders.

In the instant motion, Travelers has moved for partial summary judgment on Count 5 of its complaint. In Count 5, Travelers contends that under 12 U.S.C. § 2503 and the Minnesota U.P.A., the State lacks authority to take custody of unclaimed money orders sold by Travelers in other states. At the oral argument, defendants moved for partial summary judgment in their favor on Count 5 of the complaint, and for summary judgment on Counts 2 and 3 of the counterclaim. The sum of $90,007.83, which represents the unclaimed money orders sold in Minnesota, is not in issue on these motions.

## DISCUSSION

There is no genuine issue of any material fact in this matter. The issue is one of statutory construction. Therefore a partial summary judgment is appropriate at this time.

The basis for the State's assertion of a right to take custody of the unclaimed money orders is three statutory provisions. The first is section 2503 of Title 12, United States Code.[2] This statute establishes a

state takes custody and remains the custodian in perpetuity. Although the actual possibility of his presenting a claim in the distant future is not great, the owner retains his right of presenting his claim at any time no matter how remote. State records will have to be kept on a permanent basis. In this respect the measure differs from the escheat type of statute, pursuant to which the right of the owner is foreclosed and title to the property passes to the state." 8 Uniform Laws Annotated 73, at 74 and 116 (Master Ed. 1972) (Commissioners' Prefatory Note).

2. The full text of 12 U.S.C. § 2503 provides:
Where any sum is payable on a money order, traveler's check, or other similar written instrument (other than a third party bank check) on which a banking or financial organization or a business association is directly liable—

(1) if the books and records of such banking or financial organization or business association show the State in which such money order, traveler's check, or similar written instrument was purchased, the State shall be entitled exclusively to escheat or take custody of the sum payable on such instrument, to the extent of that State's power under its own laws to escheat or take custody of such sum;

(2) if the books and records of such banking or financial organization or business association do not show the State in which such money order, traveler's check, or similar written instrument was purchased, the State in which the banking or financial organization or business association has its principal place of business shall be entitled to escheat or take custody of the sum payable on such money order, traveler's check, or similar written instrument, to the extent of that State's power under its own laws to

rule for determining which state has the superior right to escheat or take custody of money orders or traveler's checks which were the result of a multistate transaction. Under section 2503, only two states have a legitimate claim to the property—the state where the money order or traveler's check was purchased, and the state where issuer's principal place of business is located. As between these two states, section 2503 gives the state of purchase the superior right. Thus, subsection 2503(1) states that whenever the issuer's records show the state of purchase, that state may take custody of the unclaimed sum if it has power under its own laws to do so. Under subsection 2503(2), if the issuer's records do not show the state of purchase, the state of the issuer's principal place of business may take custody if it has power under its own laws to do so. Under subsection 2503(3), if the issuer's records show the state of purchase but the state of purchase does not have power under its laws to take custody, then the state of the principal place of business of the issuer may take custody "to the extent of that State's power under its own laws to escheat or take custody of such sum."

The extent of Minnesota's power under its own laws to take custody of unclaimed money orders is set forth in the U.P.A., Minn.Stat. §§ 345.31–60. The State urges that two provisions of this Act provide the authority to take custody of the money orders involved in this case. One provision expressly deals with money orders. Section 345.32(c) provides:

(c) Any sum, excluding contracted service charges which may be deducted for a period not to exceed one year, payable on checks certified in this state or on written

instruments issued in this state on which a banking or financial organization or business association is directly liable, including, by way of illustration but not of limitation, drafts, money orders and traveler's checks, that has been outstanding for more than seven years from the date it was payable, or from the date of its issuance if payable on demand, or, in the case of traveler's checks, has been outstanding for more than 15 years from the date of its issuance, unless the owner has within seven years, or within 15 years in the case of traveler's checks, corresponded in writing with the banking or financial organization or business association concerning it, or otherwise indicated an interest as evidenced by a memorandum on file with the banking or financial organization or business association.

The other provision relied upon by the State is the omnibus provision covering "[a]ll intangible personal property, not otherwise covered by sections 345.31 to 345.60." Section 345.39 provides:

All intangible personal property, not otherwise covered by sections 345.31 to 345.60, including any income or increment thereon, but excluding any charges that may lawfully be withheld, that is held or owing in this state in the ordinary course of the holder's business and has remained unclaimed by the owner for more than seven years after it became payable or distributable is presumed abandoned. Property covered by this section includes, but is not limited to: (a) unclaimed wages or worker's compensation; (b) deposits or payments for repair or purchase of goods or services; (c) credit checks or memos, or customer overpayments; (d) unidentified remittances, unrefunded

---

escheat or take custody of such sum, until another State shall demonstrate by written evidence that it is the State of purchase; or
(3) if the books and records of such banking or financial organizations or business association show the State in which such money order, traveler's check, or similar written instrument was purchased and the laws of the State of purchase do not provide for the escheat or custodial taking of the sum payable on such instrument, the State in which the banking or financial organization or busi-

ness association has its principal place of business shall be entitled to escheat or take custody of the sum payable on such money order, traveler's check, or similar written instrument, to the extent of that State's power under its own laws to escheat or take custody of such sum, subject to the right of the State of purchase to recover such sum from the State of principal place of business if and when the law of the State of purchase makes provision for escheat or custodial taking of such sum.

overcharges; (e) unpaid claims, unpaid accounts payable or unpaid commissions; (f) unpaid mineral proceeds, royalties or vendor checks; and (g) credit balances, accounts receivable and miscellaneous outstanding checks.

In Count 5 of its complaint, Travelers asserts that it is entitled to a declaration that the State is not entitled to any of the unclaimed money orders sold by Travelers outside of the State of Minnesota. Its reasoning is that for Minnesota to be entitled to take custody of these sums under 12 U.S.C. § 2503(3), the state where the money orders were sold must lack a law authorizing custodial taking of the money orders, and Minnesota must have a statute expressly authorizing it to take custody of money orders sold outside the State. It asserts that neither section 345.32(c) nor section 345.39 authorizes Minnesota to take custody of unclaimed money orders sold by Travelers outside the State.

## I. CONSTRUCTION OF 12 U.S.C. § 2503(3) AND MINN.STAT. § 345.32(c)

The Court's primary inquiry on this motion is the proper construction of the federal statute, 12 U.S.C. § 2503. In construing this statute, two important developments in the law of escheat and custodial taking of unclaimed property provide significant insights into the meaning and purpose of section 2503. These developments are the proposal by the Commissioners on Uniform Laws of the Uniform Disposition of Unclaimed Property Act (hereinafter referred to as the Uniform Act), and a series of Supreme Court cases dealing with conflicts among the states over the right to escheat or take custody of unclaimed intangible property.

The Uniform Act was first proposed in 1954 and was significantly amended in 1966. Briefly stated, the Uniform Act establishes a presumption that property which has remained unclaimed for the requisite period of time has been abandoned by its owner. It requires the holder of abandoned property to report information about the property to the state, which in turn attempts to locate the owner of the property. If the owner cannot be located, the state takes custody of the property subject to the right of the owner to recover it at any time. The Uniform Act specifically provides for the state to take custody of intangibles such as money orders, traveler's checks, stock dividends, savings deposits, and similar unpaid claims. To date, 31 states have adopted the Uniform Act. *See* 8 Uniform Laws Annotated 73, 115 (Master Ed. 1972 and 1980 Supp.). Minnesota enacted the Uniform Act in 1969. Minn.Stat. § 345.31 *et seq.*

The conflicting rights of states to take custody of unclaimed intangible property that is the product of a multistate transaction has given rise to several United States Supreme Court decisions. In 1961, the Supreme Court held that state laws which potentially impose multiple escheat liability deprive the holder of due process of law. *Western Union Telegraph Co. v. Pennsylvania,* 368 U.S. 71, 82 S.Ct. 199, 7 L.Ed.2d 139 (1961). The question of which state is entitled to take custody of intangible property was first presented to the Supreme Court in *Texas v. New Jersey,* 379 U.S. 674, 85 S.Ct. 626, 13 L.Ed.2d 596 (1965). In this case, various states claimed the right to escheat or take custody of unclaimed debts owed by the Sun Oil Company. The State of Texas invoked the Supreme Court's original jurisdiction to settle the controversy. After considering the rules proposed by each state, the Supreme Court selected the rule it believed would best promote "ease of administration and . . . equity" among the states. *Id.* at 683, 85 S.Ct. at 631. The Court's rule holds that the state of the creditor's last known address as shown by the debtor's books and records is entitled to the property. If the debtor does not have a record of the creditor's last known address, or if the address is in a state which did not provide for escheat or custodial taking of the property, then the state where the debtor is incorporated may take custody of the funds until such time as the other state's law makes provision for escheat of such property. *Id.* at 682, 85 S.Ct. at 631. A few years later, the Court was asked to determine whether the rule of *Texas v. New Jersey* should apply when the debtor does not regularly record the addresses of

its creditors. At stake in *Pennsylvania v. New York*, 407 U.S. 206, 92 S.Ct. 2075, 32 L.Ed.2d 693 (1972), were money orders issued by Western Union Telegraph Co. which had remained unpaid for many years. Western Union's books and records generally showed the place of purchase but not the purchaser's address. Several states argued that strict application of the *Texas v. New Jersey* rule would result in a windfall for the state of incorporation (in this case, the State of New York). The Supreme Court rejected this argument and applied the rule of *Texas v. New Jersey*. Thus, the rule evolved that intangible property escheats to the state of the creditor's last known address. In the event that the address is unknown or the state of the last known address has no provision for escheat of intangibles, the property escheats to the state of incorporation. Under this rule neither the state where the property was purchased nor the state where the issuer's principal place of business is located has a claim to the property.

In 1974, Congress acted to modify this rule as applied to money orders and traveler's checks when it enacted the Disposition of Abandoned Money Orders and Traveler's Checks Act, 12 U.S.C. § 2501 *et seq.* Congress found that a substantial majority of the purchasers of such intangible property reside in the state where the money order or traveler's check was purchased. 12 U.S.C. § 2501. In section 2503, Congress modified the result of the *Pennsylvania v. New York* decision by declaring that the state where the money order or traveler's check was purchased has top priority to take custody of such unclaimed property. If the issuer's books and records do not show the state of purchase, or if they do show the state of purchase but the state has no power under its own laws to take custody, then the state of the issuer's principal place of business, not the state of incorporation, has the right to take custody of the property.

When construing this statute, Congress' purposes must be borne in mind. *See Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 608, 99 S.Ct. 1905, 1911, 60 L.Ed.2d 508 (1979). Section 2503 was obviously designed to modify the rule established by the Supreme Court. Section 2503 was also plainly designed to interact with the Uniform Act. It is presumed that a lawmaking body acts with the existing law in mind and that new statutes will harmonize rather than conflict with existing statutes. *See Finberg v. Sullivan*, 461 F.Supp. 253, 258 (E.D.Pa.1978). Here, the three definitions in section 2502 adopt the language used to define these terms in section 1 of the Uniform Act. Further, by providing that the state of the issuer's principal place of business may claim abandoned money orders if the state of purchase has no power to do so, section 2503 recognizes that many but less than all states have adopted the Uniform Act or a similar law. Therefore, section 2503 should be construed to function harmoniously with the Uniform Act in determining which of the several states has the superior claim to abandoned intangible property.

The issue raised by Travelers is whether the phrase "to the extent of that State's power under its own laws to escheat or take custody of such sum" of subsection 2503(3) requires that Minnesota have a law expressly authorizing it to take custody of unclaimed money orders sold outside the State. Travelers contends that "such sum" refers only to money orders issued in states other than where the issuer's principal place of business is located. The State's primary source of power to take custody of unclaimed intangible property is found in Minn.Stat. § 345.32(c). This statute is expressly limited to money orders "issued in this state." Therefore, Travelers argues, Minnesota does not have power under its own laws to take custody of the unclaimed money orders in question.

Defendants interpret the phrase "to the extent of that State's power under its own laws to escheat or take custody of such sum" more broadly. Defendants contend that it must have been Congress' intent that any state enacting section 2(c) of the Uniform Act (which Minnesota has done in section 345.32(c)) has given itself power to take custody of any unclaimed money order that federal law allows it to claim. Thus,

defendants argue that Minnesota need not have a statute authorizing the State to take custody of money orders issued in another state; it need only have a statute authorizing it to take custody of money orders in general, which section 345.32(c) does.

To properly interpret section 2503, the Court must consider the context in which the statute was enacted. Congress enacted section 2503 to resolve disputes over the conflicting rights of states to take custody of intangible property which was the result of a multistate transaction. In doing so, Congress recognized that some states have enacted statutes enabling them to take custody of abandoned intangible property such as money orders and traveler's checks, and that other states have not. This recognition is reflected in section 2503 by the proviso "to the extent of that State's power under its own laws to escheat or take custody of such sum." Congress also permitted two, and only two, states to escheat or take custody of unclaimed money orders and traveler's checks—the state of purchase or the state of the issuer's principal place of business. The purpose of subsection 2503(3) is to ensure that unclaimed money orders and traveler's checks accrue to the state of the issuer's principal place of business if the state of purchase has not enacted a law permitting such state to claim the property.

■ Plaintiff interprets section 2503 to require the state of the issuer's principal place of business to have a law expressly authorizing the state to take custody of money orders sold by the issuer in another state. To accept plaintiff's interpretation of section 2503 would require believing that

Congress intended that all 31 states which have adopted the Uniform Act must amend their laws by adding a section authorizing the state to take custody of unclaimed money orders and traveler's checks issued in another state.[3] Stated another way, plaintiff's interpretation turns both subsections 2503(2) and 2503(3) into excess baggage. If the provisions of the Uniform Act do not provide a state where an issuer's principal place of business is located with power to take custody of intangible property of the type described in section 2503, then no state adopting the Uniform Act has the power to utilize either subsection 2503(2) or 2503(3). Plaintiff's interpretation of section 2503 creates a conflict between section 2503 and the Uniform Act rather than allowing the two statutes to work in harmony. Moreover, plaintiff's interpretation of section 2503 frustrates the purpose of the statute by permitting the fortuitous holder of the unclaimed property to retain possession of the property even though the state designated by Congress to be the secondary claimant, the state of the issuer's principal place of business, has power to take custody of unclaimed intangible property. Such an interpretation could not be what Congress intended when it enacted section 2503.

Accordingly, it is the decision of this Court that under section 345.32(c) of the U.P.A., Minnesota has sufficient power within the meaning of 12 U.S.C. § 2503(3) to take custody of unclaimed money orders held by Travelers whether or not the money orders were sold in Minnesota. Therefore, Travelers' motion for partial summary judgment on Count 5 of its complaint will

---

**3.** Travelers argues that the statutory use of the phrase "to the extent of" implies the possibility that the drafters of section 2503 believed that different state legislatures would go to varying lengths in expressly permitting claims on money orders sold in another state. Travelers thus reads the phrase "to the extent of" as an invitation to the various states to modify the provisions of the Uniform Act. Plaintiff's interpretation of the phrase is not persuasive. In the six years since section 2503 was enacted, none of the 31 jurisdictions which have adopted the Uniform Act have amended their laws to expressly permit taking custody of money orders sold in another state. *See* 8 Uniform Laws Annotated 73, at 86–87 and 125–26 (Master Ed.

1972 and 1980 Supp.). In contrast, a number of minor modifications in the extent of the coverage of section 2(c) of the Uniform Act had already been made at the time that section 2503 was enacted. For example, Minnesota originally set 20 years rather than seven as the period a money order must remain unclaimed before it is presumed abandoned. Similarly, Iowa set the period for abandonment at 10 years and Oklahoma set the period for abandonment at 14 years. 8 *Uniform Laws Annotated* at 86. The phrase "to the extent of" is a recognition that some states had already made minor modifications in the coverage of the Uniform Act; it is not a federal invitation to make further modifications of the Uniform Act.

be denied, and the State's motion for partial summary judgment in its favor on Count 5 will be granted. However, before Minnesota may actually take custody of the money orders held by Travelers, it must still establish that no other state holds a superior claim to the money orders. For this reason, the Treasurer's motion for summary judgment on Counterclaims 2 and 3 will be denied.

## II. CONSTRUCTION OF MINN.STAT. § 345.39

Even if this Court were to read subsection 2503(3) as advocated by plaintiff, the inquiry would not end. The State asserts that section 345.39, the omnibus provision of the U.P.A., provides the State with authority to claim the money orders sold by Travelers in another state.

■ Section 345.39 is a miscellaneous provision designed to cover a very wide range of intangible personal property. This provision covers "[a]ll intangible personal property not otherwise covered" by the U.P.A. The breadth of this provision is very important to the objectives of the Act. These objectives are to protect the unknown owners of the property by locating them and restoring the property to them, and to give the benefit of the use of unclaimed property to all citizens of the State rather than the fortuitous holder of the property. See Douglas Aircraft Co. v. Cranston, 58 Cal.2d 462, 24 Cal.Rptr. 851, 374 P.2d 819, 821 (1962). To advance the objectives of the Act, section 345.39 is written in broad, general language and uses few modifiers, which would limit the coverage of this section. Plaintiff raises several arguments why money orders purchased in other states should be excluded from the coverage of section 345.39. This attempt conflicts with the objective of permitting all citizens to enjoy the benefit of unclaimed property rather than only the fortuitous holder.

■ Plaintiff first argues that money orders are covered by section 345.32(c) and therefore are excluded from any further coverage by section 345.39. Such an interpretation of section 345.39 is not required

by its language and conflicts with its role as an omnibus section. Other types of property explicitly covered in sections 345.32 to 345.38 are also covered in section 345.39. For instance, section 345.35 covers stocks and dividends, and the Commissioner's Note to section 9 of the Uniform Act states that stocks and dividends will be embraced in section 9 also. Thus the omnibus section is clearly intended to include property of the type dealt with elsewhere in the Uniform Act.

Section 345.39 includes a list of the types of property that the section covers. Plaintiff argues that the rule of *ejusdem generis* should apply here to limit the types of property covered by section 345.39. The rule of *ejusdem generis* is an aid in construing ambiguous statutes. The principle is that by listing examples, the legislature had in mind other items of the same kind and was speaking of them as a class. See *Foley v. Whelan*, 219 Minn. 209, 17 N.W.2d 367, 371 (1945). The rule should not be used to limit the applicability of this statute which the legislature made applicable to "[a]ll intangible personal property." Moreover the legislature precluded resort to the rule of *ejusdem generis* when it wrote that "this section includes, *but is not limited to*" the listed items. Minn.Stat. § 345.39 (emphasis added).

Plaintiff next contends that the legislature must have intended to exclude demand instruments such as money orders from the coverage of section 345.39 because this section, in contrast to section 345.32(c), does not expressly state that demand instruments are considered payable from the date of issuance. The flaw in this argument is that among the list of items expressly included in section 345.39 are credit checks, unpaid vendor checks, and miscellaneous outstanding checks. Under plaintiff's interpretation, none of these could be considered unclaimed property unless they had been presented for payment. Clearly this is not what the legislature intended.

Finally, plaintiff argues that adopting defendants' interpretation of section 345.39 would result in various inconsistencies in the Act as a whole. Plaintiff asserts that under defendants' interpretation, money or-

ders sold by Travelers in Minnesota would be treated differently than money orders sold by Travelers outside the State, and that such anomalous treatment is without any rational basis.

The first inconsistency pointed out by plaintiff is that under section 345.32(c), contracted service charges may only be withheld for one year, while section 345.39 contains no express time limitation on service charges. This inconsistency, however, is not the type of inconsistency that leads to a conclusion that money orders are not intended to be covered by section 345.39. The clause in section 345.32(c) limiting service charges to one year was amended into that section in 1977. 1977 Minn.Laws c. 137, § 3. Moreover, this inconsistency is exactly the type of difference one would expect to find between an omnibus provision, which must be drafted in broad language to cover a wide range of situations, and a specific provision, which normally includes more narrowly drafted language.

The second inconsistency found by plaintiff is the requirement of section 345.32(c) that the owner must not have corresponded with the holder for seven years before the property may be presumed abandoned. Section 345.39 contains no comparable requirement. Thus, in the rare instance where the owner of a money order may correspond with the holder, an owner in Minnesota may be treated differently than an out-of-state owner. However, Minnesota owners are treated more favorably than out-of-state owners, and it is not irrational for a state to treat the property rights of its own residents more solicitously than the rights of out-of-state residents.

A third inconsistency raised by plaintiff is that when the U.P.A. was adopted in 1969, section 345.32(c) included a 20 year period before money orders were presumed aban-

doned, while section 345.39 contained a seven year period for presumed abandonment. Section 345.32(c) was amended in 1977 to reduce the period for presumed abandonment from 20 years to seven years. 1977 Minn.Laws c. 137, § 3. Again, this inconsistency between the treatment of in-state and out-of-state residents is not irrational and does not compel acceptance of plaintiff's interpretation of section 345.39.

The fourth inconsistency raised by plaintiff involves section 345.42. This section requires that the State publish a notice listing the names of the persons appearing to be owners of abandoned property. Subdivision 4 of this section specifically exempts "traveler's checks and money orders presumed abandoned under section 345.32" from the publication requirement. Plaintiff asserts that money orders presumed abandoned under section 345.39 would still be subject to the publication requirement. However, this is not true. Under section 345.41(b)(1), the report that holders of unclaimed property must provide to the Treasurer need not include the names or last known addresses of the owners of unclaimed money orders. Thus, it is impossible for the State to publish the names and addresses of owners of money orders presumed abandoned under either section 345.-32(c) or section 345.39.[4]

Plaintiff asserts that the State's interpretation of section 345.39 would subject the holders of unclaimed money orders to multiple liability. Plaintiff argues that any state where the money order may be found to be "held or owing" would have an equal claim to the property, and that a money order may be considered to be "owing" in any state where the owner could demand payment of the money order. This argument overlooks Minn.Stat. § 345.44 and 12 U.S.C. § 2503. Section 345.44 provides that the State indemnifies the holder for any fur-

---

**4.** Travelers also argues that the failure of the legislature to mention section 345.39 in subdivision 4 of section 345.42 evidences a belief by the legislature that money orders and traveler's checks were to be covered solely by section 345.32. This argument overlooks the fact that the purpose of an omnibus provision is to extend the coverage of an Act to include situations which could not be foreseen at the time

the Act was drafted, yet which still fall within the scope of the Act. The failure of the legislature in section 345.42 subd. 4 to expressly foresee that in some situations money orders and traveler's checks may fall within the purview of the omnibus provision does not evidence an intent to exclude such property from section 345.39.

ther claims against the property. Section 2503 is designed to eliminate the problem of multiple liability by providing that only two states have a legitimate claim to the property, with one state's claim being superior to the other's. These two sections should satisfy plaintiff's apprehension that it may be subject to multiple liability.

▇ Throughout many of the foregoing arguments, plaintiff points out and relies upon the concerns of Commissioners on Uniform Laws for avoiding conflicts among the states over the right to take custody of the same item of abandoned property. The Court understands plaintiff's argument, but is not persuaded that these concerns compel a narrow interpretation of section 345.39. It is true that sections 345.32 to 345.38, which are drafted to restrict applicability to one state, and section 345.40, which provides for deference to any superior claims of another state if the other state makes a reciprocal provision for any superior claims of Minnesota, reflect a concern for preventing multiple liability and conflicts between the states. Nevertheless, until all states adopt the Uniform Act (or a similar unclaimed property law), interstate conflicts are likely to occur in situations where unclaimed intangible property is connected to two states and only one state has a custodial taking or escheat law. As 12 U.S.C. § 2503(3) recognizes, the state with a custodial taking or

escheat law will attempt to claim the property. A broad reading of section 345.39 is not only consistent with the Commissioners' intent, but also furthers the intent. The overriding objective of the Uniform Act is to give the benefit of the use of abandoned property to all citizens of a state connected with the property rather than to the fortuitous holder of the property. Section 9 was obviously meant to be given a broad reading to promote this objective because it expressly applies to *all* intangible personal property. A broad reading also furthers the Commissioners' presumed intent to encourage all states to adopt the Uniform Act. When a state with an unclaimed property law realizes that property it could have taken is being taken by another state, it will feel pressure to adopt the Uniform Act also.

From the foregoing, a consistent interpretation of section 345.39 emerges. This section permits Minnesota to take custody of abandoned intangible property held in Minnesota for an owner in a different state if the owner's state does not have an unclaimed property law. But if the owner's state adopts the Uniform Act in the future, then Minnesota will apparently be required, pursuant to sections 345.40 and 345.44,[5] to turn over to the owner's state the property which the latter state may properly claim.[6] This interpretation promotes the objectives

---

**5.** Section 345.44 provides that when the State takes custody of abandoned property under the U.P.A., the State indemnifies the holder and relieves the holder from liability "for any claim which then exists or which thereafter may arise or be made in respect to the property by any claimant, *including any state.*" (Emphasis added.)

**6.** The text of section 345.40 also supports this interpretation of section 345.39. Section 345.40 provides:

If specific property which is subject to the provisions of sections 345.32, 345.35, 345.36, 345.37 and 345.39 is held for or owed or distributable to an owner whose last known address is in another state by a holder who is subjected to the jurisdiction of that state, the specific property is not presumed abandoned in this state and subject to sections 345.31 to 345.60 if:

(a) it may be validly claimed as abandoned or escheated under the laws of such other state; and

(b) the laws of such other state make reciprocal provision that similar specific property is not presumed abandoned or escheatable by such other state when held for or owed or distributable to an owner whose last known address is within this state by a holder who is subject to the jurisdiction of this state.

This provision implicitly recognizes that intangible property may be held by a corporation in Minnesota for an owner who lives in another state, and that Minnesota would have a claim to the property under 345.39. In this case, Travelers holds unclaimed money orders owned by persons who live in other states, and Minnesota may claim the property under section 345.39 unless the property may be claimed by the owner's state and such state makes reciprocal provision for similar property in Minnesota.

of the Uniform Act, protects the rights of the owners and holders of the property, and will not create conflicts among the states.

## CONCLUSION

In summary, 12 U.S.C. § 2503(3) permits the State where an issuer of money orders has its principal place of business to escheat or take custody of unclaimed money orders held by the issuer, (a) if the state where the money order is purchased does not have power to escheat or take custody of the property, and (b) to "the extent of that State's power under its own laws to escheat or take custody of such sum." It is the conclusion of this Court that under either section 345.32(c) or section 345.39, Minnesota has sufficient power under its own laws to take custody of abandoned money orders held by Travelers.

Accordingly,

IT IS ORDERED that:

(1) Travelers' motion for summary judgment on Count 5 of its complaint be and hereby is denied.

(2) Defendants' motions for summary judgment dismissing Count 5 of Travelers' complaint be and hereby are granted.

(3) Defendant Treasurer's motion for summary judgment on Counts 2 and 3 of the Counterclaim be and hereby is denied because further factual issues in those counts still exist.