**TRAVELERS EXPRESS CO., INC., a Minnesota Corporation, Appellant,**

v.

**The STATE OF MINNESOTA and Jim Lord, Treasurer, State of Minnesota, Appellee.**

**No. 81–1506.**

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 14, 1981.

Decided Dec. 1, 1981.

Gray, Plant, Mooty, Mooty & Bennett, Curtis D. Forslund (argued), George W. Soule, Minneapolis, Minn., for appellant.

Warren Spannaus, Atty. Gen., Karen G. Schanfield (argued), Robert R. Nardi, Sp. Asst. Attys. Gen., St. Paul, Minn., for appellee.

Before GIBSON, Senior Circuit Judge, BRIGHT and ROSS, Circuit Judges.

BRIGHT, Circuit Judge.

This case presents the narrow issue of whether the State of Minnesota has the right to custody of a fund held by Travelers Express Company (Travelers) representing unclaimed money orders issued outside Minnesota. The federal statute, 12 U.S.C. § 2503 (1976), authorizes each state to take custody of sums payable on unclaimed money orders to the extent of the state's power under its own laws.[1] Travelers contends that the federal statute requires Minnesota to have *specific* legislation enabling it to take possession of unclaimed money orders issued in states other than Minnesota. Minnesota claims that the language of two sections of its version of the Uniform Disposition of Unclaimed Property Act (U.P.A.), Minn.Stat.Ann. §§ 345.31–.60 (West 1972 & Supp.1981), satisfies the federal requirement of state authority to claim the fund at issue in this action.

I. *Background.*

Travelers is incorporated under the laws of, and has its principal place of business in,

1. Section 2503 provides:

Where any sum is payable on a money order, traveler's check, or other similar written instrument (other than a third party bank check) on which a banking or financial organization or a business association is directly liable—

(1) if the books and records of such banking or financial organization or business association show the State in which such money order, traveler's check, or similar written instrument was purchased, that State shall be entitled exclusively to escheat or take custody of the sum payable on such instrument, *to the extent of that State's power under its own laws to escheat or take custody of such sum*;

(2) if the books and records of such banking or financial organization or business association do not show the State in which such money order, traveler's check, or similar written instrument was purchased, the State in which the banking or financial organization or business association has its principal place of business shall be entitled to escheat or take custody of the sum payable on such money order, traveler's check, or similar written instrument, *to the extent of that State's power under its own laws to escheat or take custody of such sum*, until another State shall demonstrate by written evidence that it is the State of purchase; or

(3) if the books and records of such banking or financial organizations or business association show the State in which such money order, traveler's check, or similar written instrument was purchased and the laws of the State of purchase do not provide for the escheat or custodial taking of the sum payable on such instrument, the State in which the banking or financial organization or business association has its principal place of business shall be entitled to escheat or take custody of the sum payable on such money order, traveler's check, or similar written instrument, *to the extent of that State's power under its own laws to escheat or take custody of such sum*, subject to the right of the State of purchase to recover such sum from the State of principal place of business if and when the law of the State of purchase makes provision for escheat or custodial taking of such sum. [12 U.S.C. § 2503 (1976) (emphasis added).]

the State of Minnesota. It sells money orders to customers in every state of the nation. While Travelers' records do not show the names or addresses of the money order purchasers, they do show the states in which the money orders were sold. At present, if nobody presents a money order for payment, Travelers keeps the amount, receiving a windfall benefit.

Minnesota adopted a version of the U.P.A. in 1969. The U.P.A. authorizes the state treasurer to take custody of abandoned property, including money orders. This action does not eliminate the owner's property rights; rather, the state remains the custodian in perpetuity or until the owner presents a claim. Although the property covered by the U.P.A. is presumed abandoned if left unclaimed for a designated number of years, the owner may present a valid claim at any time, no matter how remote.

Minnesota examined Travelers' books to determine if Travelers was properly reporting property subject to the U.P.A.[2] According to the report prepared by the Treasurer, Travelers held $6,477,170.46 in unclaimed money orders that were subject to Minnesota's U.P.A. See Travelers Express Co. v. Minnesota, 506 F.Supp. 1379, 1381 (D.Minn.1981). Three categories comprise this sum: (1) $90,007.83 represents money orders sold in Minnesota; (2) $788,435.08 represents money orders sold in states without custodial taking or escheat laws; and (3) $5,598,727.55 represents money orders sold in states with custodial taking or escheat laws that, for some reason, are not subject to the applicable provisions.[3]

On June 20, 1980, Travelers filed a declaratory judgment action to determine whether Travelers, or the State of Minnesota, was entitled to custody of funds resulting from the unclaimed money orders. Travelers then moved for partial summary judgment contending that Minnesota lacked the authority to take custody of these funds. The district court[4] rejected Travelers' contentions and held that Minnesota possessed the requisite authority to take custody of the funds. Travelers brings this interlocutory appeal. See 28 U.S.C. § 1292(b) (1976).

## II. Discussion.

The Disposition of Abandoned Money Orders and Traveler's Checks Act, 12 U.S.C. §§ 2501–2503 (1976), establishes the rule for determining which state has a superior right to escheat or take custody of funds held on unclaimed money orders resulting from a multistate transaction.[5] Under section 2503, only two states have a legitimate claim to this property—the state in which the money order was purchased, and the state in which the issuer's principal place of business is located. In the event of a conflict, the statute gives the state of purchase the superior right subject to authorization to take the property in question under the state's own laws. As the district court noted:

Thus, subsection 2503(1) states that whenever the issuer's records show the state of purchase, that state may take custody of the unclaimed sum if it has power under its own laws to do so. Under subsection 2503(2), if the issuer's records do not show the state of purchase, the state of the issuer's principal place of business may take custody if it has power under its own laws to do so. Under subsection 2503(3), if the issuer's records show the state of purchase but the state

---

2. Minnesota acted on behalf of itself and eleven other states. The U.P.A. gives Minnesota the right to examine the records of anyone if there is reason to believe that property considered abandoned under the statute has not been reported. See Minn.Stat.Ann. § 345.53 (West 1972).

3. The parties contest custody of only the latter two sums in this appeal. Travelers concedes that Minnesota may claim funds held by Trav-

elers from outstanding money orders sold in Minnesota.

4. The Honorable Harry H. MacLaughlin, United States District Judge for the District of Minnesota.

5. For a discussion of the jurisdictional conflicts that led to the present legislation, see Travelers Express Co. v. Minnesota, supra, 506 F.Supp. at 1383–84.

of purchase does not have power under its laws to take custody, then the state of the principal place of business of the issuer may take custody "to the extent of that State's power under its own laws to escheat or take custody of such sum." [*Travelers Express Co. v. Minnesota, supra,* 506 F.Supp. at 1382.]

Minnesota and Travelers disagree on the proper interpretation of the phrase "to the extent of that State's power under its own laws to escheat or take custody of such sum." The district court held that section 345.32(c) of Minnesota's U.P.A.[6] gave the state sufficient power within the meaning of the federal statute to take custody of all unclaimed money orders held by Travelers. *See Travelers Express Co. v. Minnesota, supra,* 506 F.Supp. at 1385. In addition, Judge MacLaughlin found the requisite authority in the omnibus provision, Minn.Stat. Ann. § 345.39 (West.Supp.1981).[7] *See Travelers Express Co. v. Minnesota, supra,* 506 F.Supp. at 1389.

Travelers does not dispute that Minnesota could take legislative action granting itself authority to take custody of the fund at issue. It argues instead, that neither section 345.32(c), nor section 345.39, as currently enacted, supplies the requisite authority.

We disagree with the district court's conclusion that section 345.32(c) applies to these funds. We agree, however, that the omnibus provision, section 345.39, provides the requisite authority, and therefore affirm the district court.

■ After a lengthy discussion of the purpose of the federal statute, 12 U.S.C. § 2503 (1976), the district court concluded that section 345.32(c) gave Minnesota power to take custody of the fund. *See Travelers Express Co. v. Minnesota, supra,* 506 F.Supp. at 1381–85. By its terms, however, this section is limited to written instruments *issued in* Minnesota. It is impossible, therefore, to construe section 345.32(c) as granting the state authority over the fund held on money orders *issued outside* Minnesota. We hold, therefore, that section 345.-32(c) does not authorize Minnesota to take custody of the funds at issue in this appeal.

Travelers further contends that the U.P. A.'s legislative history suggests that its authors did not intend any provisions of the Act to reach money orders issued outside an enacting state. While the Uniform Law Commissioners did not adopt a proposal to eliminate the phrase "in this state" from

---

6. Section 345.32(c) provides:
 The following property held or owing by a banking or financial organization or by a business association is presumed abandoned:
 * * * * * *
 (c) Any sum, excluding contracted service charges which may be deducted for a period not to exceed one year, payable on checks certified in this state or on written instruments issued in this state on which a banking or financial organization or business association is directly liable, including by way of illustration but not of limitation, drafts, money orders and traveler's checks, that has been outstanding for more than seven years from the date it was payable, or from the date of its issuance if payable on demand, or, in the case of traveler's checks, has been outstanding for more than 15 years from the date of its issuance, unless the owner has within seven years, or within 15 years in the case of traveler's checks, corresponded in writing with the banking or financial organization or business association concerning it, or otherwise indicated an interest as evidenced by a memorandum on file with the banking or financial organization or business associa-

tion. [Minn.Stat.Ann. § 345.32(c) (West Supp.1981).]

7. Section 345.39 provides:
 All tangible personal property, not otherwise covered by sections 345.31 to 345.60, including any income or increment thereon, but excluding any charges that may lawfully be withheld, that is held or owing in this state in the ordinary course of the holder's business and has remained unclaimed by the owner for more than seven years after it became payable or distributable is presumed abandoned. Property covered by this section includes, but is not limited to: (a) unclaimed wages or worker's compensation; (b) deposits or payments for repair or purchase of goods or services; (c) credit checks or memos, or customer overpayments; (d) unidentified remittances, unrefunded overcharges; (e) unpaid claims, unpaid accounts payable or unpaid commissions; (f) unpaid mineral proceeds, royalties or vendor checks; and (g) credit balances, accounts receivable and miscellaneous outstanding checks. [Minn.Stat. Ann. § 345.39 (West Supp.1981).]

the U.P.A. counterpart of section 345.32(c), *see* Proceedings in the Committee of the Whole, Uniform Act for Disposition of Unclaimed Property, National Conference on Uniform Laws, August 9–14, 1954, at 25C (Statement of Commissioner Stason), there is no evidence that the Conference intended to exclude completely from the U.P.A. coverage of money order transactions occurring outside the enacting state.

In recommending that the phrase "in this state" be retained in section 345.32(c), the Commissioners addressed an issue not in controversy. No dispute existed over whether in-state transactions could, or should, be covered. At most, this "legislative history" indicates that the Commissioners intended to limit the scope of section 345.32(c) to in-state transactions. The Commissioners did not purport to decide whether a state generally could reach funds accruing from transactions occurring outside the state, as that issue was not before them.

The Uniform Law Commissioners, therefore, did not specifically address the question raised here—whether Minnesota has authority to assume custody of funds from money orders issued in other states. Instead, the Commissioners recommended an omnibus provision, Minnesota's section 345.-39, to cover a wide variety of situations not specifically addressed by individual provisions of the U.P.A.

■ Section 345.39 does provide Minnesota with the necessary power to claim sums held on money orders sold by Travelers in other states. We note first that the section is cast in broad language, covering "all intangible property, not otherwise covered * * *." Minn.Stat.Ann. § 345.39 (West Supp.1981). Travelers argues that money orders are excluded from the coverage of this section because they are "otherwise covered" by section 345.32(c). We reject this argument as based on too narrow a

reading of the statute. As noted above, while section 345.32(c) covers sums held on money orders issued in Minnesota, it does not purport to cover sums from money orders issued outside Minnesota. Moreover, Travelers' reading would make senseless the examples cited by the Uniform Law Commissioners. For instance, the official comment states that dividends, stocks, bonds, and securities are covered by omnibus provision, *see* 8 Uniform Laws Annotated 94 (Master Ed.1972), even though another section also covers these same items. *See* Minn.Stat.Ann. § 345.35 (West Supp. 1981). Coverage of money orders elsewhere in the U.P.A., therefore, does not preclude their coverage by section 345.39.

The purpose of the U.P.A. fortifies our conclusion that Minnesota has a superior right to these funds. The Commissioners' Prefatory Note states a preference for an adopting state's use of the unclaimed fund over possession by the fortuitous holder. *See* 8 Uniform Laws Annotated 75 (Master Ed. 1972); *see also Travelers Express Co. v. Minnesota, supra,* 506 F.Supp. at 1386 (noting U.P.A. objectives).

Travelers contends that interpreting section 345.39 to cover money orders issued outside Minnesota will result in different treatment of the instruments depending on the state of issue. Particularly, Travelers notes discrepancies between section 345.-32(c) and section 345.39 concerning the time limitation for withholding service charges, the presumed period of abandonment,[8] and the requirement for corresponding with the money order holder. We agree with the district court that these inconsistencies are minor, and to be expected, when comparing an omnibus provision, drafted in broad language, with a specific provision that is narrowly drafted. Judge MacLaughlin adequately addressed Travelers' contentions, *see id.* at 1387–88, and we need not recount them further in this opinion.

---

8. When the U.P.A. was adopted in 1969, § 345.32(c) included a 20 year period before money orders were presumed abandoned, while § 345.39 contained a seven year period for presumed abandonment. In 1977, § 345.32(c) was amended to reduce the period from 20 to seven years. *See* 1977 Minn.Laws ch. 137, § 3. Now, therefore, the presumed periods of abandonment are identical.

Accordingly, we affirm. In doing so, we note that the merits of the claims and Travelers' defenses remain to be tried by the district court.