TRAVELERS EXPRESS COMPANY, INC., a corporation, Plaintiff-Appellant,

v.

Kenneth CORY, Controller of the State of California, Defendant-Appellee.

No. 80–5121.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 6, 1981.

Decided Dec. 21, 1981.

---

Franklin H. Wilson, McCutchen, Black, Verleger & Shea, Los Angeles, Cal., for plaintiff-appellant.

Yeoryios C. Apallas, Deputy Atty. Gen., San Francisco, Cal., argued for defendant-appellee.

David J. Epstein, Los Angeles, Cal., for amicus curiae State of Ill., Commonwealth of Mass., State of Mont., State of Neb., State of R. I., State of Wash. and State of Wis.

William Alsup, Morrison & Foerster, San Francisco, Cal., for amicus curiae Crocker National Bank.

Before SNEED, KENNEDY and SKOPIL, Circuit Judges.

SNEED, Circuit Judge:

This appeal raises the question whether either the defense of statute of limitations or equitable estoppel bars the California Controller's suit to recover unclaimed property under the Uniform Disposition of Unclaimed Property Act, California Code of Civil Procedure §§ 1500–1527 (West & West Supp.1981), also known as the Unclaimed Property Law (UPL).[1] The suit grows out of a long running battle between Travelers Express Company and the Controller of California over the disposition of unclaimed money orders. It is but one of many cases in which certain institutional arrangements have been employed in an attempt to avoid the escheat of unclaimed travelers' checks, bank deposits, medical payments checks, or money orders. Each attempt, including this one, has failed to achieve its purpose.[2] The result we reach in this case has been foreshadowed by *Blue Cross of Northern California v. Cory*, 120 Cal.App.3d 723, 174 Cal. Rptr. 901 (1st Dist. 1981). Accordingly, we hold that neither defense is effective against the Controller. As modified by our holding on the statute of limitations, we affirm the judgment of the district court.

I.

FACTS

Travelers Express Company is a Minnesota corporation in the business of selling money orders since 1940. Two predecessor and subsidiary corporations have operated in California since 1946; in 1962 one of these companies was merged into the other and in 1965 that company was merged into the plaintiff-appellant, Travelers Express Company, Inc.

The UPL requires holders of money orders unclaimed for seven years and therefore "deemed abandoned" to file annual reports with the Controller. Cal.Civ.Proc. Code §§ 1530, 1513(e), 1511(b). Six months after the report is filed, the holder must pay over the unclaimed property to the state. Cal.Civ.Proc.Code § 1532(a). For unclaimed money orders sold from 1959 to 1969 (and consequently escheated from 1966 to 1976), Travelers followed a policy of deducting a service charge of 25¢ a month ($3.00 a year). Excerpt of Record, Judgment, Finding of Fact (FOF) 11. Since the average money order is small ($13.00), at the end of the seven year abandonment period the $21.00 service charge assessed by Travelers wiped out approximately 78% of the face value of the unclaimed money orders on Travelers' books. Excerpt of Record, Judgment, FOF 7, 12.

1. As plaintiff is a citizen of the State of Montana and defendant of the State of California, federal jurisdiction and venue exist by virtue of diversity of citizenship under 28 U.S.C. § 1332.

2. In *Douglas Aircraft Company v. Cranston*, 58 Cal.2d 462, 24 Cal.Rptr. 851, 374 P.2d 819 (1962) (Traynor, J.), the California Supreme Court held that the UPL does *not* apply to unpaid wage claims on which the old statute of limitations had run before the UPL was passed. Every subsequent decision in California has gone against the institutional holder of unclaimed property. *See Bank of America v. Cranston*, 252 Cal.App.2d 208, 60 Cal.Rptr. 336 (1st Dist. 1967) (unclaimed traveler's checks); *Bank of America v. Cory*, Nos. 250500 & 257509 (California Superior Court June 20, 1976) (Perluss, J.) (Appellee's Appendix D) (unclaimed bank deposits, plus service charges and accrued interest); *Screen Actors Guild, Inc. v. Cory*, 91 Cal.App.3d 111, 154 Cal.Rptr. 77 (2d Dist. Mar. 28, 1979) (unclaimed actors' residual checks); *Cory v. Golden State Bank*, 95 Cal.App.3d 360, 157 Cal.Rptr. 538 (2d Dist. July 25, 1979) (service charges on unclaimed money orders) (affirming summary judgment); *Travelers Express Co., Inc. v. Cory*, No. 77–1086 R, *unpublished decision* (C.D.Cal. Jan. 7, 1981) (service charges on unclaimed money orders) (this case below); *Travelers Express Co., Inc. v. Minnesota*, 506 F.Supp. 1379 (D.Minn. Feb. 11, 1981) (state had power under UPA to escheat money orders sold out of state by domicile corporation); *Blue Cross of Northern California v. Cory*, 120 Cal.App.3d 723, 174 Cal. Rptr. 901 (1st Dist. June 22, 1981) (unclaimed medical payments checks issued by insurer).

Until 1964, Travelers reported unclaimed property without indicating that the amount reported was net of service charges. Excerpt of Record, Judgment, FOF 12. In 1964 Travelers stated in writing in its report to the Controller that the amount reported was net of service charges. The charge of up to $21.00 on every order and the total amount of service-charged property withheld was not disclosed, however. *Id.*

The present action arose after the Controller demanded on February 8, 1977, that Travelers pay, under threat of a 25% interest penalty, more than $1,000,000 in escheated property that it had illegally withheld from the state by deducting unauthorized service charges. Travelers commenced this diversity suit in the federal district court for declaratory judgment on its liability to the Controller, and then paid the sum under protest.

Although Travelers contended below that its service charges were authorized under provisions of the UPL prior to 1975, that issue is not presented on appeal. Rather, Travelers asserts that the district court erred by denying, first,[3] Travelers' claim that the statute of limitations bars the Controller's suit on property escheated before February 8, 1974 (three years before his 1977 demand letter), and second, Travelers' claim that the Controller was equitably estopped to assert any claims to amounts deducted in service charges from money orders escheated before August, 1978.[4]

---

3. For purposes of organization, we discuss the issues in reverse order from the way they were raised in appellant's opening brief.

4. Money orders sold in August, 1971 when Travelers' alleged reliance ceased did not escheat until August, 1978. Thus, as asserted by Travelers the defense of equitable estoppel bars the Controller's entire claim. Because we find no equitable estoppel, we need not decide whether an estoppel based on reliance until August, 1971 necessarily bars suit on all money orders *sold*, rather than *escheated*, before that time.

5. Section 338 must be read in context with sections 312 and 335 of the Code of Civil Procedure. In pertinent part, the three sections provide:

312. Civil actions ... can only be commenced within the periods prescribed in this

## II.

## THE STATUTE OF LIMITATIONS

Travelers relies on California Code of Civil Procedure § 338(1) which establishes the statute of limitations applicable to civil actions to enforce liabilities created by statute. A civil action must be commenced within three years if it is

an action upon a liability created by statute other than a penalty or forfeiture, except where a different limit is prescribed by statute. Cal.Civ.Proc. Code § 338(1).[5]

This statute of limitations is applicable to the state in the same way as it is to a private person. Cal.Civ.Proc. Code § 345.

Under California law, an obligation is one created by statute if it is fixed by the statute itself, or if a duty exists only by virtue of the statute. A liability created by statute is one in which no element of agreement exists, *Copitas v. Retail Clerks Intern. Ass'n.*, 618 F.2d 1370, 1373 (9th Cir. 1980); *Gardner v. Basich Bros. Const. Co.*, 44 Cal.2d 191, 194, 281 P.2d 521 (1955), and which would not exist *but for* the statute, *Fidelity and Deposit Company of Maryland v. Lindholm*, 66 F.2d 56, 58 (9th Cir. 1933).

Travelers maintains that since its liability to the Controller arises only from its duty under the UPL to report and pay over abandoned property in its possession,[6] the

---

title, after the cause of action shall have accrued, unless where, in special cases, a different limitation is prescribed by statute.
. . . .
335. The periods prescribed for the commencement of actions other than for the recovery of real property, are as follows:
. . . .
338. Within three years:
1, An action upon a liability created by statute, other than a penalty or forfeiture.
. . . .

6. The Controller has the power to seek a judicial determination with respect to a particular property. Cal.Civ.Proc. Code § 1572 states that:

a) the State Controller may bring an action in a court of appropriate jurisdiction, as specified in this section, for any of the following purposes:

statute of limitations applies to and bars the Controller's action to recover property escheated before February 8, 1974. According to Travelers, no cause of action on behalf of the state would ever arise but for the UPL.

The Controller, on the other hand, argues that section 338(1) does not apply because the legislature specifically abrogated it with

. . . .

(2) For a judicial determination that particular property is subject to escheat by this state pursuant to this chapter.

7.  "The expiration of any period of time specified by statute or court order, during which an action or proceeding may be commenced or enforced to obtain payment of a claim for money or recovery of property from the holder, does not prevent the money or property from being escheated, nor affect any duty to file a report required by this chapter or to pay or deliver escheated property to the State Controller." Cal.Civ.Proc. Code § 1570.

8.  At stake were uncashed medical payment checks issued by Blue Cross. Among its affirmative defenses to the Controller's cross-complaint, Blue Cross alleged that each of several statutes of limitations barred his recovery. The trial court rejected this theory, stating in omnibus terms that "[t]he Controller's claim is not barred by the statute of limitations." *Blue Cross of Northern California v. Cory*, 120 Cal. App.3d 723, 741, 174 Cal.Rptr. 901 (1st Dist. 1981). The California Court of Appeals reversed, holding that the three year limit of section 338(1) applied to the Controller's action as a matter of law.

Section 338(1) applies generally to civil actions other than a penalty or forfeiture, except where, in special cases, a different limitation is prescribed by statute. Cal.Civ.Proc. Code § 312. The court of appeals took the language of the trial court to mean that it had disallowed the applicability of section 338(1) on the theory that a different limitation, *i. e.*, no limitation, was prescribed by section 1570. Thus, the court of appeals in *Blue Cross* reviewed the history of section 1570 to determine its scope.

The language of present section 1570 appeared in essentially the same form as section 1515 of the UPL when the latter was first enacted in 1959. (Stats.1959, ch. 1809, § 2, p. 4304; *see Douglas Aircraft Co. v. Cranston*, 58 Cal.2d 462, 24 Cal.Rptr. 851, 374 P.2d 819 (1962) (Traynor, J.). The legislature amended section 1515, and renumbered it as section 1570 in 1968. (Stats.1968, ch. 356, § 42, p. 755.) In the interim the California Supreme Court had held in *Douglas Aircraft* that section 1515 was not intended to cause the UPL to reach actions that were time-barred before the effective date

respect to the UPL in enacting section 1570.[7] This position has been rejected by *Blue Cross of Northern California v. Cory*, 120 Cal.App.3d 723, 174 Cal.Rptr. 901 (1st Dist. 1981). That court held that section 338(1) does apply to state actions under the UPL because the liability of the holder of escheated property is created by the UPL exclusively.[8] *Id.* at 741–43, 174 Cal.Rptr. 901.

of the statute in 1959. *Douglas Aircraft, supra*, at 466. The holding in *Douglas Aircraft* thus makes it impossible to maintain that section 1570 (previously section 1515) abrogates *every* statute of limitations in an action by the Controller, since under *Douglas Aircraft* the running of a statute of limitations on a claim before the effective date of the UPL, as between the holder and the owner, remained available to the holder as a defense in an action brought against him by the Controller for recovery of the property. *Blue Cross, supra*, 120 Cal.App.3d at 742, 174 Cal.Rptr. 901.

When the legislature renumbered section 1515 as section 1570 in 1968, it took explicit notice of *Douglas Aircraft* and amended the statute to conform to the decision by adding the words "from the holder" where they now appear, but it intended no substantive change which would have altered the effect of the decision. *Blue Cross, supra*, at 742, 174 Cal. Rptr. 901. Because the liability of the holder of escheated money is created by the UPL exclusively, involves no element of agreement between the parties mentioned, and has no equivalent at common law, which recognized the doctrine of escheat as an incident of the feudal system affecting land alone, the court held that the Controller's suit fits within the terms of section 338(1). *Id.*

Section 1570 was apparently meant to ensure that abandoned property did not fall to the holder instead of the state merely because the *owner* would not be able to claim it as against the holder. *Douglas Aircraft* interpreted section 1570 as abrogating the statute of limitations for all actions unbarred as of the effective date of the UPL, but not for actions time-barred *prior* to the Act's effective date, in accord with what Lawrence Tribe has called the "odd notion" that extensions of statutes of limitations are allowed, *Roberts v. United States*, 239 F.2d 467 (9th Cir. 1956), while revivals of expired statutes of limitations are not, *State v. Sneed*, 25 Tex.Supp. 66 (1860). This is justified on the theory that defendant acquires a right to rely once the statute of limitations has fully run, *see* Tribe, L., *American Constitutional Law*, 484 n.9 (1978); Note, *Ex Post Facto Limitations on Legislative Power*, 73 Mich.L.Rev. 1491, 1512 n.78 (1973).

*Douglas Aircraft* held that as to claims that would arise in the future, section 1515 (now

■ However, that court also held that the Controller's cause of action does not accrue automatically at the moment the money escheats after abandonment for seven years. Rather, the cause of action accrues when the holder becomes obligated to pay the unclaimed money to the Controller. Section 1532, subdivision (a), fixes that time at six months after the holder has reported the unclaimed money to the Controller as required by section 1530. It follows that no statute of limitations will commence to run against the Controller's recovery of unclaimed money, pursuant to the UPL, unless—and until six months after—the holder has reported it in compliance with section 1530. *Blue Cross, supra,* at 743, 174 Cal.Rptr. 901.

■ The issue, therefore, is whether Travelers has reported, in conformity with section 1530, the property which escheated, the recovery of which would be barred were sections 338(1) and 1532 otherwise properly applicable. Unlike Blue Cross in its case, here Travelers did file annual reports with the Controller on a portion of the escheated property. It reported, however, only that amount of unclaimed property that remained after subtracting a service charge of up to $21.00 on each money order, in each yearly report from 1966 to 1976. Excerpt of Record, Judgment, FOF 12. The annual reports specifically stated that the amounts reported were net of lawful service charges.

This reporting does not comply with the requirements of section 1532. Subdivision (b) of that section provides that the holder may forestall or avoid the obligation of payment if he files a written explanation of a reason why the property is not subject to escheat. Travelers' communications with the Controller and his predecessors, taken together with the notice it gave that amounts reported were net of service charges, might arguably seem to constitute such an explanation. The relief from payment made available by section 1532(b),

however, is open only to those who have filed a "written explanation ... of the reason the property is not subject to escheat." Travelers never filed such a report *for the service-charged amounts.*

To claim the relief provided by 1532(b), Travelers must have filed a report of the *entire* amount of unclaimed money orders pursuant to section 1530. This Travelers did not do. This report must have been followed with a written explanation of why the service-charged portion was not subject to escheat. This Travelers also did not do.

The effect of Travelers' failure to report in accordance with sections 1530 and 1532(b) is quite clear. Section 1532(a) provides that the holder of the unclaimed money has a present duty to pay it to the Controller "within six months from the final date for filing reports as required by section 1530." If the money is never properly reported, *Blue Cross* holds that the present duty to pay does not arise and the Controller's cause of action does not accrue *for purposes of the statute of limitations.* The Controller's cause of action against Travelers in this case, therefore, is not barred by the statute of limitations.

This is a just result. Under *Blue Cross,* a bank, insurance company, or money order company will not be able to claim the statute of limitations as a defense unless it has specifically reported the unclaimed property pursuant to section 1530 and thus clearly put the property's legal status in issue. Section 1532(b) is available to such holders of unclaimed property as a means of avoiding the present duty to pay with respect to property that is for some reason thought not to be subject to escheat.

The bar of section 338(1) would have been available had Travelers stated the relevant dollar amounts in each annual report, and then paid over only the portion that it deemed subject to escheat, and furnished the written explanation required by section

section 1570) prevents the running of the statute applicable between holder and owner from barring the duty of the holder to report and pay to the Controller. 24 Cal.Rptr. at 854. By contrast, *Blue Cross* holds that the running of

section 338(1) as between the holder and the Controller will bar the holder's duty to *pay* three years and six months after the holder *reports.* Thus, the decisions are consistent and complementary.

1532(b). Under these circumstances, a failure to seek a judicial determination pursuant to section 1572 within three years would have barred the Controller's claims. Travelers' actual practices, however, obscured the extent of its withholding and avoided presenting the legal issue explicitly. To facilitate the enforcement by the Controller of the UPL, it is necessary that claims such as Travelers' be stated explicitly to commence the running of the limitation period.

## III.

## EQUITABLE ESTOPPEL

Travelers also contends that the Controller, while fully aware of Travelers' practice of deducting service charges before remitting the net amount of uncashed money orders to the State, acquiesced in these practices in 1965, and proceeded to accept annual reports and remittances from Travelers without question until at least 1971. Thus, Travelers asserts, the Controller is estopped from taking his present position. Equitable estoppel, if applicable, would bar the Controller's claims to any amount deducted in service charges from money orders issued before August, 1971.[9] The court below, however, found the factual elements of an estoppel were not present. Excerpt of Record, Judgment, FOF 22–27.

The relevant facts are as follows. In 1946 Travelers' predecessors began operating in California. California adopted in 1959 the Uniform Disposition of Unclaimed Property Act which, with some amendments, became known as the Unclaimed Property Law (UPL). The year before, Travelers commenced charging 25 cents a month to money orders unclaimed after a year. In 1961 the UPL was amended to cover money orders from businesses like Travelers. The Corporations Commissioner in 1964 ordered Travelers to cease and desist from deducting the service charges from the interest-free "unclaimed monies" trust account as they accrued. Travelers thereafter did not deduct any service charge from the trust account for the first

seven years the money order was unclaimed. At the expiration of that period the service charge amount was retained by Travelers just as if it had been deducted on a monthly basis, and the net amount remitted to the Controller. In late 1964 Travelers chose to come under the supervision of the Banking Superintendent. In 1965 the law was amended so that Travelers was no longer required to hold unclaimed monies in a non-interest-bearing trust account.

Travelers' interactions with the Controller began in 1964. In May of that year, the Controller claimed $11,205 in unremitted service charges from Travelers. In a meeting with the Deputy Attorney General, Travelers asserted both statutory authority for the charges and the expense of maintaining records of uncashed items as its justifications for not remitting. The outcome of the meeting was inconclusive.

In April, 1965, the Controller again asserted his claim against Travelers for $11,205. The following month Travelers met with respect to the issue with the Controller, who indicated that Travelers' position appeared reasonable. He requested a letter stating Travelers' legal position, on receipt of which he promised to see that the matter was promptly and finally resolved. On May 28, 1965, Travelers sent the requested letter. It received no reply.

A six-year silence was broken in August 1971, when the Controller sued Travelers in state court for unclaimed money orders. Travelers filed its reply in October, 1971. The next step in the lawsuit did not occur until August, 1974. Thereafter, this state suit was settled by Travelers' paying to the Controller the proceeds of uncashed money orders sold by it in California prior to 1959. Finally, the Controller on February 8, 1977 demanded payment of $1,114,829 in escheated money orders. In response, Travelers brought this lawsuit.

■ Four elements are required to create an equitable estoppel. The party to be estopped must have been apprised of all the facts; that party must either have intended that its conduct be acted upon or act in such a way that the party asserting the estoppel

**9.** *See* note 4, *supra.*

has reason to believe it was so intended; the party asserting the estoppel must be ignorant of any other state of facts; and the party asserting the estoppel must rely to its detriment on the facts asserted. *City of Long Beach v. Mansell*, 3 Cal.3d 462, 489, 91 Cal.Rptr. 23, 476 P.2d 423 (1970); *Mt. Vernon Memorial Park v. Board of Funeral Directors*, 79 Cal.App.3d 874, 887, 145 Cal. Rptr. 275 (1978).

Travelers has failed to show that the Controller acted in such a way as to cause reliance by Travelers. The only *action* by the Controller that could be interpreted this way is the May, 1965 meeting with the Controller. The result of that meeting, however, was inconclusive. The most that can be said is that following the meeting the Controller pursued a course of equivocal *inaction*. Travelers was, or should have been, aware that reliance on equivocal *inaction* to fix its legal rights was unjustified. The Controller's course enabled Travelers to retain the funds for a number of years and thereby conferred a benefit upon Travelers which cannot be twisted into reliance to its detriment.

As was held in *Blue Cross* in its alternative ground for rejecting a claim of laches, the finding that Blue Cross had the interest-free use of the money for several years was in itself "a finding that it had not been prejudiced by any delay on the part of the Controller." *Blue Cross, supra*, 120 Cal. App.3d at 744, 174 Cal.Rptr. 901. *Compare Bank of America v. Cory*, California Superior Court No. 257509, Memorandum Opinion (June 20, 1976) (Perluss, J.) ("Here the 'Chutzpa Principle' is directly applicable for the banks used the depositors' money to make money. They hardly are in a position to say that in equity the Controller may not now seek to collect service charges the banks have improperly made . . . .") The trial court in this case found that "[I]t is doubtful that there is any hardship or injustice that would be suffered by plaintiff from a failure to uphold an estoppel against the Controller. . . ." Excerpt of Record, FOF 27. This finding is not clearly erroneous.

AFFIRMED.